MICHAEL R.W. HOUSTON
CITY ATTORNEY
MOSES W. JOHNSON, IV
Assistant City Attorney
E-mail: mjohnson@anaheim.net
200 S. Anaheim Boulevard, Suite 356
Anaheim, California 92805
Tel: (714) 765-5169 Fax: (714) 765-5123

Attorneys for Defendants CITY OF
ANAHEIM, and CITY OF ANAHEIM
erroneously sued as ANAHEIM POLICE
DEPARTMENT and DAVID GARCIA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA PADILLA AND MARIO CEJA,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, AND DOE OFFICERS OF THE ANAHEIM POLICE DEPARTMENT, AND DOES 1 through 10, Inclusive,,<br><br>        Defendants. | Case No.:   SACV12-622 JVS(JPRx)<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF DAVID GARCIA AND MOSES W. JOHNSON, IV**<br><br>DATE:    August 5, 2013<br>TIME:    1:30 p.m.<br>CTRM:   10C<br><br>MOTION HRG. CUTOFF:   7/8/13<br>TRIAL DATE:   9/24/13 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 5, 2013 at 1:30 p.m., in

Courtroom 10C, or as soon thereafter as counsel may be heard by the above-

entitled Court, located at 411 W. 4th St., Santa Ana, California, Defendants CITY

OF ANAHEIM ("Anaheim"), and CITY OF ANAHEIM erroneously sued as

ANAHEIM POLICE DEPARTMENT and DAVID GARCIA ("Garcia")

(collectively "Defendants") will and hereby do move the Court for summary

1   judgment and/or partial summary judgment under FRCP 56 on all federal claims

2   of Plaintiffs: 1) Violation of Federal Civil Rights [42 USC §1983], 2) Monell

3   claim, 3) Wrongful Death (state claim) based on a) Assault and Battery, b)

4   Negligence, and c) Negligent Hiring, Training, and Retention, and 4) Violation

5   of State Civil Rights (state claim) (Civil Code §52.1).

6          This motion is brought on the grounds that there is no genuine issue as to

7   any material fact and that the moving parties are entitled to judgment as a matter

8   of law for the reasons that the City of Anaheim and Officer Garcia's actions were

9   reasonable, their actions were not unrelated to any legitimate law enforcement

10  purpose, and did not result from an unlawful City custom, policy, or practice.

11  Further, the incident was not a violation of Plaintiffs' civil rights.

12         This Motion is based on this Notice of Motion and Motion, the

13  accompanying Memorandum of Points and Authorities, Separate Statement of

14  Uncontroverted Facts and Conclusions of Law, the declarations of David Garcia

15  and Moses W. Johnson, IV, filed herewith, the Complaint filed in this case, all

16  pleadings and papers on file in this action, and upon such other matters as may

17  be presented to the Court at the time of the hearing on the Motion.

18         This Motion is made following the conference of counsel pursuant to LR

19  7-3 which took place on June 10, 2013.

20  Dated:  July 5, 2013                 MICHAEL R.W. HOUSTON, CITY
                                         ATTORNEY
21

22                                   By:

23                                       Moses W. Johnson, IV
                                         Assistant City Attorney
24                                       Attorneys for Defendant
                                         CITY OF ANAHEIM, and CITY OF
25                                       ANAHEIM erroneously sued as
                                         ANAHEIM POLICE DEPARTMENT
26                                       and DAVID GARCIA

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

    I.    INTRODUCTION .............................................................................. 1

    II.    FACTS ALLEGED ............................................................................ 1

    III.    FACTS ............................................................................................... 2

    IV.    ARGUMENT ..................................................................................... 6

        A.    STANDARD OF REVIEW .................................................... 6

    V.    NO NEED TO DISPROVE OPPONENTS' CASE .......................... 7

    VI.    4TH AMENDMENT-OFFICER CAN FIRE WHEN THREATENED WITH SERIOUS INJURY OR DEATH ............... 8

    VII.    14th AMENDMENT-OFFICER'S CONDUCT DOES NOT "SHOCK THE CONSCIENCE" ...................................................... 16

    VIII.   NO MONELL LIABILITY ............................................................. 19

    XI.    CONCLUSION ............................................................................... 25

1

TABLE OF AUTHORITIES

2

Page

3

**State Cases**

4

City of Simi Valley v. Sup.Ct.
    (2003) 111 CA4th 1077, 1084, 4 CR2d 468, 473 ..................................... 23

5

6

Edson v. City of Anaheim
    (1998) 63 CA4th 1269, 1272, 1273-1274, 74 CR2d 614 ................... 22, 24

7

Foster v. City of Fresno
    (ED CA 2005) 392 FS2d 1140, 1159 ....................................................... 22

8

9

Hernandez v. City of Pomona
    (2009) 46 C4th 501, 513, 514 ................................................................. 21

10

Kortum v. Alkire
    (1977) 69 CA3d 325, 138 CR 26 ............................................................... 8

11

12

MacEachern v. City of Manhattan Beach
    (CD Cal. 2009) 623 FS2d 1092, 1099-1101, 1102 ............................ 15, 18

13

Martinez v. County of Los Angeles
    (1996) 47 CA4th 334, 343, 344, 345, 349-350, 54 CR2d 772, 780 .... 23, 24

14

15

People v. Martin
    (1985) 168 CA3d 1111, 1124, 214 CR 873, 882 ....................................... 8

16

People v. Rivera
    (1992) 8 CA4th 1000, 1007 ..................................................................... 22

17

18

Price v. County of San Diego
    (SD CA 1998) 990 FS 1230, 1244 ........................................................... 22

19

Reynolds v. County of San Diego
    (SD CA 1994) 858 FS 1064, 1074, 1168 ............................................ 15, 22

20

21

**State Statutes**

22

California Govt. Code §820.2 .................................................................... 22

23

California Civil Procedure § 377.60 ......................................................... 21

24

Civil Code §52.1 ...................................................................................... 1, 2

25

Govt. Code §815.2 ............................................................................... 22, 23

26

Penal Code §835a .................................................................................... 24

27

28

1

**Federal Cases**

2

Alexander v. City and County of San Francisco
    (9th Cir. 1994) 29 F.3d 1355, 1366 ................................................. 14

3

Anderson v. Liberty Lobby Inc.
    (1986) 477 US 242, 106 S.Ct. 2505, 2514 ..................................... 6

4

5

Billington v. Smith
    (9th Cir. 2002) 292 F.3d 1177, 1184, 1189 ..................................... 14, 15, 16

6

Bingue v. Prunchak
    (9th Cir. 2008) 512 F.3d 1169, 1176 ........................................... 17

7

8

Blanford v. Sacramento County
    (9th Cir. 2005) 406 F3d 1110, 1115 ........................................... 8, 9

9

Bryan County Commissioners Court v. Brown
    (1997) 520 US 397, 403, 404 ..................................................... 20

10

Celotex Corp. v. Catrett
    (1986) 477 US 317, 323, 106 S.Ct. 2548, 2553 ........................... 7

11

12

Celotex Corporation v. Catrett
    (1986) 477 US 317, 325, 477 US at 322, 323, 324, 327 106 S.Ct. at 2552,
    2553, 2555, 2548, .................................................................... 6, 7, 8

13

14

Chappell v. City of Cleveland
    (6th Cir. 2009) 585 F.3d 901 ..................................................... 12

15

16

Chew v. Gates
    (9th Cir. 1994) 27 F.3d 1432, 1441 ........................................... 11

17

City of Canton v. Harris
    (1989) 489 US 378, 388, 390 - 391, 392, 398, 109 S.Ct. 1197, 1206
    .................................................................................................... 19, 20, 21

18

19

City of Oklahoma v. Tuttle
    (1985) 417 US 808, 823-824 ..................................................... 20

20

City of St. Louis v. Praprotnik
    (1988) 485 US 112, 122-128 ..................................................... 20

21

22

Claybrook v. Birchwell
    (6th Cir. 2000) 199 F.3d 350, 359, 360 ..................................... 18

23

24

Collins v. Harker Heights
    (1992) 503 US 115, 122 ............................................................. 20

25

County of Sacramento v. Lewis
    (1998) 523 U.S. 833, 846, 118 S.Ct. 1708 ............................... 16

26

27

Crawford v. Countrywide Home Loans, Inc.
    (7th Cir. 2011) 647 F3d 642, 648 ............................................. 7

28

Daniels v. Williams
(1986) 474 US 327, 328, 332-333 ...................................... 16

Deorle v. Rutherford
(9th Cir. 2001) 272 F.3d 1272, 1277, 1278, 1281, 1285, 1282-1284... 11, 12

F.T.C. v. Network Services Depot, Inc.
(9th Cir. 2010) 617 F.3d 1127, 1139 ................................. 11

Federal Ins. Co. v. Burlington Northern & Sante Fe Ry. Co. (CD CA 2003) 270
FS2d 1183, 1185 ...................................................... 7

Gassaway v. Northern Mut. Life Ins. Co.
(9th Cir. 1994) 26 F3d 957, 960 ..................................... 8

Gibson v. County of Washoe
(9th Cir. 2002) 290 F3d 1175, 1185 ................................. 20

Graham v. Connor
(1989) 490 US 386, 394-396, 395-397, 109 S.Ct. 1865................ 8, 10, 11

Hansen v. Black
(9th Cir. 1989) 885 F2d 642, 644 .................................... 6

Hopkins v. Andaya
(9th Cir. 1992) 958 F.2d 881, 884, 886-888.......................... 13

Jackson v. City of Bremerton
(9th Cir. 2001) 268 F3d 646, 651 ................................... 9

Johnson v. Hix Wrecker Service, Inc.
(7th Cir. 2011) 651 F3d 658, 662 ................................... 7

Lane v. Department of Interior
(9th Cir. 2008) 523 F3d 1128, 1140 ................................. 7

Lewis,
523 US at 836, 118 S.Ct. 1708, 1720 ............................... 17, 18

Monell v. Dept. of Social Services
(1978) 436 US 658.................................................. 19, 20

Oviatt v. Pierce
(9th Cir. 1992) 954 F2d 1470, 1477, 1478 .......................... 19, 21

Pembaur v. City of Cincinnati
(1986) 475 US 469,478-484, 481, 106 S.Ct. 1292.................... 19

Porter v. Osborn
(9th Cir. 2008) 546 F.3d 1131, 1133-1134,1137, 1139, 1140 ......... 16, 17

Price v. Sery
(9th Cir. 2008) 513 F3d 962, 969 ................................... 8

Reynolds v. County of San Diego
(9th Cir. 1996) 84 F.3d 1162, 1168 ................................ 14, 15

Scott v. Henrich,
    (9th Cir. 1994) 39 F.3d 912, 915 .................................................. 11, 14, 15

Smith v. City of Hemet
    (9th Cir. 2005) 394 F.3d 689, 704 ...................................................... 15

Smolen v. Deloitte, Haskins & Sells
    (9th Cir. 1990) 921 F2d 959, 963 ........................................................ 6

Tennessee v. Garner
    (1985) 471 U.S. 1, 11-12, 105 S.Ct. 1694 ......................................... 8, 14

Thompson v. City of Los Angeles
    (9th Cir. 1989) 885 F2d 1439, 1444 ...................................................... 21

Ting v. United States
    (9th Cir. 1991) 927 F2d 1504, 1513 ....................................................... 8

United States v. Ramirez
    (9th Cir. 2007) 473 F.3d 1026, 1038 ..................................................... 11

Wilkinson v. Torres
    (9th Cir. 2010) 610 F.3d 546, 551 554, cert. denied, 131 S.Ct. 1492 (2011)
    ............................................................................................. 11, 15, 18


**Federal Statutes**

42 USC §1983 .................................................................................. 1, 2

FRCP 56 ............................................................................................. 6

FRCP 56(c) ........................................................................................ 6

FRCP 56(d) ........................................................................................ 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

This action arises out of an officer involved shooting on November 4, 2011.  Defendants seek summary judgment/partial summary judgment on Plaintiffs' claims for alleged violations of the 4th and 14th Amendments under Section 1983 in this officer involved shooting case.

Plaintiffs brought 2 federal claims under Section 1983:  1) Violation of Federal Civil Rights [42 USC §1983], and 2) Monell claim.  The federal claims are raised under the 4th and 14th Amendments.  Plaintiffs also brought 2 state claims: 3) Wrongful Death based on a) Assault and Battery, b) Negligence, and c) Negligent Hiring, Training, and Retention, and 4) Violation of State Civil Rights (Civil Code §52.1).

Officer GARCIA used reasonable force when he shot decedent in self-defense, a legitimate law enforcement goal.  The undisputed evidence establishes that Officer GARCIA shot Plaintiff in self-defense because decedent was reaching into his sweatshirt pocket, and Officer GARCIA reasonably believed decedent was going to retrieve a gun to shoot and kill Officer GARCIA or seriously injure him.  Defendants are accordingly entitled to judgment as a matter of law on Plaintiffs' 4th and 14th Amendment claims and related state claims arising out of this officer involved shooting.  Summary judgment is appropriate when the facts concerning the incident are largely undisputed.

## II.    FACTS ALLEGED

Plaintiffs' Complaint was filed on April 20, 2012.  The Complaint alleges 4 claims: 1) Violation of Federal Civil Rights [42 USC §1983], 2) Monell claim, 3) Wrongful Death (state claim) based on a) Assault and Battery, b) Negligence, and c) Negligent Hiring, Training, and Retention, and 4) Violation of State Civil Rights (state claim) (Civil Code §52.1).

1        The Complaint alleges that on November 4, 2011, at 11:54 am, in front of

2   Casa Madrid Apartment Homes, located in the 2300 block of E. Ball Rd., in the

3   City of Anaheim, an Anaheim Police Officer shot unarmed Decedent MARCEL

4   CEJA, multiple times. ¶12.  Plaintiff BARBARA PADILLA and MARCEL

5   CEJA resided at 1162 S. Bellhaven St., Apt. #D, Anaheim, CA 92806.  ¶11.

6   Plaintiff BARBARA PADILLA is the mother of MARCEL CEJA. ¶1.  MARIO

7   CEJA is a surviving parent of Decedent.  ¶2.

8        Plaintiffs' claims are brought pursuant to 42 USC §1983, and the 4th and

9   14th Amendments of the US Constitution and Civil Code §52.1.  ¶15.

10  **III.    FACTS**

11      1.     On November 4, 2011, at 11:54 am, APD Officer DAVID GARCIA

12  was assigned as a single-man patrol officer.  Officer GARCIA was driving his

13  marked patrol unit westbound on Ball Rd., west of Belhaven St.  This area is

14  known to have problems with gangs and drug trafficking.  Officer GARCIA

15  observed 3 males, including MARCEL CEJA, walking west on the north

16  sidewalk, also west of Belhaven St.  They were wearing baggy sweatshirts with

17  their hoods pulled over their heads.  Officer GARCIA made eye contact with 1 of

18  the males, but continued driving west on Ball Rd.

19      2.     As Officer GARCIA drove by, he decided to make contact with the

20  3 males.  He drove around the block by turning north on State College Blvd.,

21  turned east on Almont Ave., and turned south on Belhaven.  When he returned to

22  Ball Rd., he looked westbound but did not observe the males.  He looked

23  eastbound and observed 3 males, later identified as EDWIN SALINAS, JOSE

24  GONZALEZ and MARCEL LUIS CEJA, walking east on the north sidewalk of

25  Ball Rd., east of Belhaven.  They had changed direction.  Officer GARCIA

26  believed SALINAS, GONZALEZ and CEJA were the same males he had

27  originally observed walking west on Ball Rd., and that they had changed

28  direction to avoid contact with him.

2

3.     Officer GARCIA drove eastbound in the westbound lanes of Ball Rd. and parked along the north curb in the 2300 block of E. Ball Rd. He parked west of the alley, located on the west side of the Casa Madrid Apartment complex, located at 2301 E. Ball Rd. He grabbed his baton, which was wedged between the center console and driver's seat, and exited his patrol car.

4.     SHELLY SORENSON, a local resident, was trying to turn into the west alley of the Casa Madrid Apartments, but had to wait for CEJA and his 2 companions GONZALEZ and SALINAS to cross the driveway before commencing her turn into the alley. She observed a police car stopped along the north curb, west of the alley. CEJA, and his companions GONZALEZ and SALINAS looked westbound toward the police car; however, they continued walking eastbound.

5.     Officer GARCIA, wearing an APD police uniform, walked toward CEJA and his companions GONZALEZ and SALINAS.

6.     CEJA, GONZALEZ and SALINAS looked at Officer GARCIA and were 10 to 12 feet east of him. Officer GARCIA said, "Hi, do you mind if I talk to you for a second?" CEJA turned and walked toward him as the other 2, GONZALEZ and SALINAS, continued walking east. Officer GARCIA observed a large tattoo on the front of CEJA's neck, and based on the tattoo, neighborhood and CEJA's manner of dress, he believed CEJA may be a gang member.

7.     Officer GARCIA focused his attention toward CEJA's 2 companions, GONZALEZ and SALINAS. Then, when CEJA was 5 to 7 feet away from Officer GARCIA, CEJA turned to the other 2, and then CEJA ran away east along the north sidewalk. Officer GARCIA noticed CEJA had put his right hand inside his right sweatshirt pocket as he chased after CEJA. Officer GARCIA yelled, "Stop, police." Officer GARCIA advised dispatch, via his police radio, that he was in a foot pursuit. CEJA ran eastbound, past

3

GONZALEZ and SALINAS, and into the westbound traffic lanes.

8.     CEJA ran onto the north sidewalk and into the Casa Madrid Apartment Complex parking lot/carport area. CEJA looped back westbound, and during the chase Officer GARCIA was 7 to 10 feet behind CEJA.

9.     As CEJA continued running west, CEJA removed his right hand from his sweatshirt pocket, which was holding a chrome handgun. Officer GARCIA yelled at CEJA to get down on the ground; however, CEJA continued running west on the grass north of the sidewalk.

10.    Officer GARCIA observed CEJA stumble forward onto the grass, the handgun flew from CEJA's hand and tumbled into the shrubbery, a couple feet away from CEJA. Officer GARCIA stopped and was standing 4 to 5 feet away from CEJA, who was on the ground. CEJA assumed a seated position, turned toward Officer GARCIA, and CEJA put his left hand into his sweatshirt pocket.

11.    JAMES CLEMENTS was driving westbound on Ball Rd. and saw Officer GARCIA chasing CEJA. He looked back over his right shoulder in the "three o'clock" position, and he observed Officer GARCIA to be verbalizing orders to CEJA. He observed CEJA fall onto a sloped grassy area. He observed Officer GARCIA pointing his gun at CEJA as he was seated on the grass. CEJA's right hand was completely in his right front shorts pocket. He thought CEJA was trying to get something out of his pocket but it wouldn't come out. He could not hear what was being said because the car windows were rolled up as he was driving by, but he observed the Officer's lips moving while his gun was pointed at CEJA. CEJA appeared to be uncooperative and angry as he was moving around, looking around, and yelling something at Officer GARCIA. CLEMENTS temporarily lost sight of them because an electrical box blocked his view as he drove by. During that time, he heard 2 shots. He looked at his watch and it was 11:55 am. CLEMENTS had observed CEJA's right hand deep inside

his right, front shorts pocket, moving around as if he was attempting to remove an object from the pocket.

12.   DIANE SILVA, a resident in the area, was at home sitting on her living room couch when she heard yelling outside.  She heard 2 different voices involved, and she described the yelling as "Intense."  SILVA walked toward the sliding glass door, located on the south wall of the apartment, which faced Ball Rd.

13.   SILVA observed Officer GARCIA, with his weapon drawn, walking diagonally in a northwest direction.  From her vantage point, she could see Officer GARCIA, but not CEJA.  Officer GARCIA stepped onto the grass between the curb and the sidewalk.  Officer GARCIA continued walking and pointing his weapon in a northwest direction, but due to her obstructed view, SILVA was unable to see who Officer GARCIA was pointing his weapon at.

14.   Officer GARCIA was yelling commands the entire time, "Stop," and something to the effect of, "Get your hands out of your pockets," or "Don't put your hands in your pockets."  SILVA did not understand what was being said by CEJA, but his voice was loud and she believed he was shouting obscenities. SILVA heard Officer GARCIA yell commands at CEJA at least 3 times to remove his hands from his pocket before she heard shots fired.

15.   SILVA observed Officer GARCIA step onto the sidewalk from the grass, and he continued to walk in a northwest direction.  SILVA heard what she believed to be Officer GARCIA's commands for the 3rd time prior to the shooting.

16.   Officer GARCIA ordered CEJA to show him his hands; however, it appeared to Officer GARCIA that CEJA was manipulating a 2nd handgun in his sweatshirt pocket.  Officer GARCIA feared that it was a 2nd handgun.  Officer GARCIA ordered CEJA 3 times to show him his hands.  CEJA did not comply. Officer GARCIA was in fear that CEJA would shoot him though the sweatshirt

1   without even removing the handgun from his pocket.  Fearing for his life and due

2   to CEJA ignoring his commands and manipulating his concealed hand within his

3   sweatshirt, GARCIA fired 2 rounds, striking CEJA.

4   **IV.   ARGUMENT**

5       **A.   STANDARD OF REVIEW**

6         Defendants seek summary judgment and/or partial summary judgment

7   pursuant to FRCP 56.  Such a motion must be granted if the moving party

8   demonstrates that "there is no genuine issue as to any material fact and that the

9   moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  The

10  Court may also adjudicate less than the entire case as to specific issues without

11  substantial controversy.  FRCP 56(d).  Here, Defendants seek to have the Court

12  adjudicate the federal claims and related state claims brought by Plaintiffs arising

13  out of this shooting.  The federal claims include alleged violations of the 4th and

14  14th Amendments and <u>Monell</u>.  The moving party bears the burden of informing

15  the Court of the basis for its motion and identifying those aspects of the matter

16  which it believes indicate an absence of a genuine issue of material fact.  <u>Celotex</u>

17  <u>Corporation v. Catrett</u> (1986) 477 US 317, 325.  Once the defendant moving

18  party has identified the parts of the Plaintiffs' case where there is no genuine

19  issue, the burden shifts to the Plaintiffs as the responding parties to set forth

20  specific facts showing the existence of a genuine issue of material fact.

21  <u>Anderson v. Liberty Lobby Inc.</u> (1986) 477 US 242, 106 S.Ct. 2505, 2514.

22  Plaintiffs cannot satisfy this burden by merely relying upon their own allegations

23  and pleadings; rather Plaintiffs must set forth specific facts showing that there is

24  a genuine issue for trial.  <u>Hansen v. Black</u> (9th Cir. 1989) 885 F2d 642, 644.

25        In short, to avoid summary judgment, Plaintiffs must "produce at least

26  some significant probative evidence tending to support the Complaint."  <u>Smolen</u>

27  <u>v. Deloitte, Haskins & Sells</u> (9th Cir. 1990) 921 F2d 959, 963.  Given the matter

28  at issue here, this requires Plaintiffs to produce evidence that the shooting

1  constituted excessive force and was effectuated for the purpose of causing harm

2  unrelated to any legitimate law enforcement purpose.  Plaintiffs cannot show

3  such because the evidence establishes that the Officer's actions were reasonable.

4  **V.    NO NEED TO DISPROVE OPPONENTS' CASE**

5         Plaintiffs bear the burden of proof at trial to prove their civil rights claims.

6  There is no need to offer evidence to disprove matters on which the Plaintiffs

7  have the burden of proof at trial.  Celotex Corp. v. Catrett (1986) 477 US 317,

8  323, 106 S.Ct. 2548, 2553; Crawford v. Countrywide Home Loans, Inc. (7th Cir.

9  2011) 647 F3d 642, 648.  "A complete failure of proof concerning an essential

10 element of the nonmoving party's case necessarily renders all other facts

11 immaterial." Celotex, supra, 477 US at 323, 106 S.Ct. at 2552.  "Summary

12 judgment for a defendant is appropriate when the plaintiff fails to make a

13 showing sufficient to establish the existence of an element essential to that

14 party's case, and on which that party will bear the burden of proof at trial."

15 Celotex, supra, 477 US at 322, 106 S.Ct. at 2552; Johnson v. Hix Wrecker

16 Service, Inc. (7th Cir. 2011) 651 F3d 658, 662.

17        "Where the nonmoving party will bear the burden of proof at trial on a

18 dispositive issue, … the nonmoving party [must] … by [their] own affidavits, or

19 by the depositions … designate specific facts showing that there is a geniune

20 issue for trial.'" Celotex, supra, 477 US at 323-324, 106 S.Ct. at 2553; Federal

21 Ins. Co. v. Burlington Northern & Sante Fe Ry. Co. (CD CA 2003) 270 FS2d

22 1183, 1185.  Plaintiffs must demonstrate a "genuine" dispute as to a "material"

23 fact on all matters as to which they have the burden of proof.  Celotex, supra, 477

24 US at 324, 106 S.Ct. 2553; Lane v. Department of Interior (9th Cir. 2008) 523

25 F3d 1128, 1140 (argument insufficient to defeat summary judgment motion).

26        Simply arguing the moving parties' declarations "should be disregarded as

27 self-serving" will not avoid summary judgment.  "Mere denials" do not meet the

28 Plaintiffs' burden of showing a genuine issue of material fact.  Gassaway v.

7

1    Northern Mut. Life Ins. Co. (9th Cir. 1994) 26 F3d 957, 960.  Summary judgment

2    is <u>not</u> to be regarded as a "disfavored procedural shortcut."  <u>Celotex</u>, <u>supra</u>, 477

3    US at 327, 106 S.Ct. 2555.

4    **VI.   4TH AMENDMENT-OFFICER CAN FIRE WHEN THREATENED WITH SERIOUS INJURY OR DEATH**

5
6    The issue in this case is whether the force used by Officer GARCIA was

7    reasonable.  <u>Graham v. Connor</u> (1989) 490 US 386, 394-396, 109 S.Ct. 1865.

8    Relying upon the leading California case dealing with the use of lethal force by

9    police officers, <u>Kortum v. Alkire</u> (1977) 69 CA3d 325, 138 CR 26, and

10   considering <u>Tennessee v. Garner</u> and <u>Kortum</u> together, the Ninth Circuit

11   concluded that "under both the U.S. Constitution and California law, an officer

12   may not use deadly force unless … the officer [reasonably] believe[s] that the

13   suspect poses a significant threat of death or serious physical injury to the officer

14   or others."  <u>Ting v. United States</u> (9th Cir. 1991) 927 F2d 1504, 1513; <u>Price v.</u>

15   <u>Sery</u> (9th Cir. 2008) 513 F3d 962, 969.

16   In <u>Tennessee v. Garner</u> (1985) 471 US 1, 105 S.Ct. 1694, the court held

17   that deadly force may not be used unless the officer has reasonable cause to

18   believe that the suspect poses significant threat of death or serious physical

19   injury to the pursuing officer or others.  <u>People v. Martin</u> (1985) 168 CA3d 1111,

20   1124, 214 CR 873, 882.

21   In <u>Blanford v. Sacramento County</u> (9th Cir. 2005) 406 F3d 1110, 1115, the

22   Ninth Circuit described the reasonableness standard under <u>Graham</u> as follows:

23   "Determining whether the force used to effect a particular seizure is

24   reasonable under the Fourth Amendment requires a careful balancing of the

25   nature and quality of the intrusion on the individual's Fourth Amendment

26   interests against the countervailing governmental interests at stake." <u>Graham</u>,

27   490 U.S. at 396. . . . .  This balancing test entails consideration of the totality of

28   the facts and circumstances in the particular case, including "[1] the severity of

1   the crime at issue, [2] whether the suspect poses an immediate threat to the safety

2   of the officers or others, and [3] whether he is actively resisting arrest or

3   attempting to evade arrest by flight."  Id. Blanford, supra, 406 F3d at 1115.

4          Similarly, in Jackson v. City of Bremerton (9th Cir. 2001) 268 F3d 646,

5   651, the court held that the "reasonableness" of a particular use of force must be

6   judged from the perspective of a reasonable officer on the scene, rather than with

7   the 20/20 vision of hindsight.  The court noted the "consideration of

8   reasonableness must embody allowance for the fact that police officers are often

9   forced to make split-second judgments-in circumstances that are tense, uncertain,

10  and rapidly evolving-about the amount of force that is necessary in a particular

11  situation."  Id.

12         Here, Officer GARCIA shot CEJA because he was fearful that CEJA was

13  about to shoot him.  This is corroborated by civilian witnesses who heard Officer

14  GARCIA yelling several times, in an intense voice, words to the effect "don't put

15  your hands in your pockets" prior to the shooting.

16         Officer GARCIA's belief is reasonable based upon the following evidence:

17  1) The location where this consensual encounter took place was known to have

18  drug trafficking and gang problems; 2) Officer GARCIA believed that CEJA

19  may be a gang member based on the location of the contact (gang area), his style

20  of dress (baggy sweatshirt with the hood pulled over his head), and the large

21  tattoo on his neck; 3) As CEJA got closer to Officer GARCIA, he suddenly

22  turned and ran away, which supports an inference that CEJA was involved in

23  some criminal activity that he feared Officer GARCIA would detect; 4) As CEJA

24  ran, he put his right hand in his sweatshirt pocket; 5) As CEJA fled, he tripped

25  and fell; 6) As CEJA fell, Officer GARCIA observed CEJA's hand come out of

26  the sweatshirt pocket and a chrome handgun fly out of his hand;  7) The

27  handgun, which turned out to be loaded, landed a few feet away from CEJA in

28  some nearby shrubbery;  8) Fearing for his safety, Officer GARCIA drew his

9

1    duty weapon and pointed it at CEJA.  At this point, Officer GARCIA thought

2    that CEJA would give up; 9) Instead, CEJA rolled over onto his bottom and

3    turned to face Officer GARCIA;  10) CEJA then placed his left hand into his

4    sweatshirt pocket;  11) Officer GARCIA then observed CEJA manipulating

5    something in his pocket.  Officer GARCIA believed that CEJA had a 2nd

6    handgun in his sweatshirt pocket and that he was going to shoot right through the

7    sweatshirt; 12) A civilian witness who had been driving in the area also reported

8    seeing CEJA putting his hand into his pocket and looking like he was trying to

9    get something out of his pocket.

10        At this point, Officer GARCIA was in fear for his life.  He yelled at CEJA

11    at least 3 times to remove his hand from his sweatshirt, but CEJA failed to

12    comply.  Therefore, Officer GARCIA's fear for his own safety was reasonable

13    under the circumstances.

14        The threat, as it reasonably appeared to Officer GARCIA, was that CEJA

15    was about to shoot Officer GARCIA.  Under these circumstances, it was

16    reasonable for Officer GARCIA to respond with lethal force; any lesser force

17    would have been ineffective.  It was reasonable for Officer GARCIA to believe

18    that his life was in danger, and thus that he was justified when he shot CEJA on

19    November 4, 2011.

20        Plaintiffs' alleged Fourth Amendment violation is governed by Graham v.

21    Connor (1989) 490 US 386, 395-397, and Graham's instruction that the

22    "reasonableness" of a particular use of force must be judged from the perspective

23    of a reasonable officer on the scene.  Id. at 396-397.  All legitimate evidence

24    must be considered in the assessment of reasonableness, but under the law the

25    focus of that inquiry is to determine the officer's perception of the circumstances

26    he faced when he decided to use lethal force.  As the 9th Circuit observed

27    recently:  "we must view the facts from [the officer's] perspective at the time he

28    decided to fire … the critical inquiry is what [the officer] perceived."  Wilkinson

1    v. Torres (9th Cir. 2010) 610 F.3d 546, 551, cert. denied, 131 S.Ct. 1492 (2011).

2              The inquiry is an objective one. Graham, supra, 490 U.S. at 397 ("[T]he

3    question is whether the officers' actions are 'objectively reasonable' in light of

4    the facts and circumstances confronting them ...." (citation omitted))." A

5    reasonable use of deadly force encompasses a range of conduct, and the

6    availability of a less-intrusive alternative will not render conduct unreasonable.

7    Scott v. Henrich, (9th Cir. 1994) 39 F.3d 912, 915." Wilkinson, supra, 610 F.3d

8    at 551.

9              Thus, with regard to the first Graham factor, i.e., "the severity of the

10   underlying offense," Officer GARCIA perceived decedent was involved in a

11   suspicious activity. Stops are legal so long as officers reasonably suspect a

12   violation has occurred. United States v. Ramirez (9th Cir. 2007) 473 F.3d 1026,

13   1038. Nothing in the law requires confirmation of a prior violent act before an

14   officer is permitted to defend himself, especially when the suspect is using a

15   deadly weapon.

16             Moreover, under Fourth Amendment jurisprudence, "the most important

17   single element" in the Graham analysis is "whether the suspect pose[d] an

18   immediate threat to the safety of the officers or others." Chew v. Gates (9th Cir.

19   1994) 27 F.3d 1432, 1441.

20             Under the Fourth Amendment "an officer's use of force must be

21   objectively reasonable based on his contemporaneous knowledge of the facts."

22   Deorle v. Rutherford (9th Cir. 2001) 272 F.3d 1272, 1281. Where the facts are

23   substantially undisputed, such issues become questions of law which may be

24   properly decided by the Court on summary judgment. F.T.C. v. Network

25   Services Depot, Inc. (9th Cir. 2010) 617 F.3d 1127, 1139. Defendants can "win

26   on summary judgment if the district court concludes, after resolving all factual

27   disputes in favor of the plaintiff, that the officer's use of force was objectively

28   reasonable under the circumstances." Scott, supra, 39 F.3d at 915. Officer

11

1  GARCIA's actions were reasonable because he shot decedent as he was

2  reasonably afraid that decedent would retrieve a gun from his pocket and

3  seriously hurt or kill him.

4        Officer GARCIA was forced to make a split-second decision.  Nothing in

5  the law suggests that Officer GARCIA's perception that he was in imminent

6  danger is unreasonable.  Officer GARCIA believed that decedent was retrieving

7  a gun from his pocket to shoot at him and seriously injure or kill him, and neither

8  direct nor circumstantial evidence shows his belief to be unreasonable.

9        With regard to distance, the case of <u>Chappell v. City of Cleveland</u> (6th Cir.

10  2009) 585 F.3d 901, found the officers' conduct objectively reasonable when the

11  decedent was wielding a steak knife 5 to 7 feet away thereby making the threat of

12  injury imminent.  By comparison, the court in <u>Deorle</u>, 272 F.3d 1272, found that

13  an officer had not acted reasonably when he fired on an approaching suspect who

14  was 30 feet away.  <u>Id.</u>, at n. 11.  It should be noted, however, that <u>Deorle's</u>

15  finding of a Fourth Amendment violation relied primarily on the officer's failure

16  to give any warning before firing on an unarmed subject (here Officer GARCIA,

17  was within 5 feet, ordered decedent to "stop" and "show me your hands"), rather

18  than any conclusion that 30 feet was per se an unreasonable distance for an

19  officer to reasonably fear imminent injury.  <u>Deorle</u>, <u>supra</u>, 272 F.3d at 1275.

20        <u>Deorle</u> is distinguishable.  In <u>Deorle</u>, the officer did not order the

21  individual to "stop" before shooting.  <u>Deorle</u>, <u>supra</u>, 272 F.3d at 1284 ("warnings

22  should be given, when feasible").  The plaintiff in <u>Deorle</u> was seriously injured

23  from bean-bag ammunition shot at his face.  <u>Id.</u> at 1278.  The officer shot the

24  plaintiff after he had been on the scene for about 40 minutes, and the officer

25  knew the plaintiff was mentally disturbed.  <u>Id.</u> at 1277.  The <u>Deorle</u> plaintiff was

26  verbally abusive, but physically compliant.  <u>Id.</u>  The officer shot him without

27  warning as the plaintiff walked toward him with no weapons in hand and with a

28  steady gait.  <u>Id.</u> at 1277-1278.  The Court found that the officer's actions were

1   unreasonable. Id. at 1285.  In coming to this decision, the Court considered the

2   lack of warnings. Id. at 1282-1284.

3       Here, a warning to "stop" and "show me your hands" was given to Plaintiff

4   3 times as he reached into his pocket.  There was no time for further warnings.

5   An additional warning while Plaintiff continued to reach for a weapon would not

6   have been feasible.

7       Hopkins v. Andaya (9th Cir. 1992) 958 F.2d 881, is also distinguishable.

8   The actual facts from Hopkins make it unsupportive of any argument that the

9   shooting was unreasonable.

10      First, in Hopkins an eyewitness gave evidence that the decedent never had

11  the baton and never struck the officer (Hopkins, at 884).  Moreover, even if there

12  had been undisputed evidence of a baton attack in Hopkins, other evidence

13  showed that that the officer initially shot the suspect six times during that alleged

14  confrontation, then retreated across the street, reloaded his gun, and killed the

15  then unarmed suspect by shooting him four more times.  Hopkins, at 886-888.

16  This undisputed second use of deadly force was the basis for overturning the

17  grant of summary judgment.  Id., at 885-887.  These facts clearly distinguish

18  Hopkins from the case at hand.

19      Lastly, with regard to the third Graham factor, i.e., whether the suspect is

20  actively resisting arrest, there is no evidence that decedent made any attempt to

21  submit to Officer GARCIA's authority, and ample evidence instead that he

22  reached into his pocket causing Officer GARCIA to reasonably fear he was

23  going to shoot him.  Nothing in the evidence before this Court demonstrates that

24  Officer GARCIA had any reason to believe that decedent was consenting to a

25  detention, and, accordingly, this factor also supports the reasonableness of the

26  officer's use of force.

27      Liability does not attach because Officer GARCIA negligently "provoked"

28  the confrontation under Billington, which cited Alexander v. City and County of

13

1  San Francisco (9th Cir. 1994) 29 F.3d 1355, 1366 (holding officers provoked a

2  confrontation where they entered a man's house without a warrant and this 4th

3  Amendment violation provoked the man to shoot at the officers).

4        Such a theory fails here for two reasons.  First, under the undisputed facts,

5  there was nothing negligent about the manner in which Officer GARCIA

6  attempted to subdue the decedent.  Under California Penal Code §835(a), a

7  police officer may use reasonable force to affect an arrest and need not retreat or

8  desist from his efforts by reason of the suspect's resistance.  Moreover, even

9  when a police officer "intentionally or recklessly provokes a violent

10  confrontation," he may not be held liable for his defensive use of deadly force

11  unless the provocation was itself was an independent Fourth Amendment

12  violation.  Billington v. Smith (9th Cir. 2002) 292 F.3d 1177, 1189.  Plaintiffs

13  may not "establish a Fourth Amendment violation based merely on bad tactics

14  that result in a deadly confrontation that could have been avoided."  Billington,

15  supra, 292 F3d at 1190; Scott v. Henrich (9th Cir. 1994) 39 F.3d 912, 915 (police

16  officers need not avail themselves of the least intrusive means of responding);

17  Reynolds v. County of San Diego (9th Cir. 1996) 84 F.3d 1162, 1168

18  (distinguishing Alexander, because "the court must allow for the fact that officers

19  are forced to make split-second decisions.")  The facts are undisputed that

20  nothing Officer GARCIA did prior to the shooting of decedent could conceivably

21  constitute a violation of his Fourth or Fourteenth Amendment rights, and thus

22  under Billington there can be no civil rights violation based on Officer

23  GARCIA's allegedly provoking the confrontation.

24        "A police officer may reasonably use deadly force where he 'has probable

25  cause to believe that the suspect poses a threat of serious physical harm, ... to the

26  officer.'"  Billington, supra, 292 F.3d at 1184.  "[I]f the suspect threatens the

27  officer with a weapon ..., deadly force may be used if necessary ...."  Tennessee

28  v. Garner (1985) 471 U.S. 1, 11-12, 105 S.Ct. 1694; Smith v. City of Hemet (9th

1  Cir. 2005) 394 F.3d 689, 704 ("where a suspect threatens an officer with a

2  weapon such as a gun or knife, the officer is justified in using deadly force");

3  Reynolds, supra, 84 F.3d at 1168 (holding deadly force reasonable where

4  suspect, who was behaving erratically, swung a knife at an officer).

5  Thus, even if "an officer negligently gets himself into a dangerous situation, [it]

6  will not make it unreasonable for him to use force to defend himself," even

7  deadly force. Billington, supra, 292 F.3d at 1190; MacEachern v. City of

8  Manhattan Beach (CD Cal. 2009) 623 FS2d 1092, 1102.

9       Plaintiffs may also contend that Officer GARCIA had other alternatives

10  which he failed to use.  Whether Officer GARCIA might have been able to

11  defend himself from being shot by means other than his gun is irrelevant.  Under

12  the law, even when officers have "less intrusive alternatives available," they

13  "need not avail themselves of the least intrusive means of responding" but rather

14  must only act "within that range of conduct we identify as reasonable." Scott,

15  supra, 39 F.3d at 915.  "A reasonable use of deadly force encompasses a range of

16  conduct, and the availability of a less-intrusive alternative will not render

17  conduct unreasonable." Wilkinson, supra, 610 F.3d at 551.  Here, the officer

18  reasonably believed he was faced with deadly force.

19       Lastly, Plaintiffs may attempt to use a police expert's declaration to create

20  a triable issue of fact.  However, for summary judgment purposes, the fact that an

21  expert disagrees with the officer's actions does not render the officer's actions

22  unreasonable. Billington held that the cases of Scott v. Henrich (9th Cir. 1994)

23  39 F.3d 912 and Reynolds v. County of San Diego (9th Cir. 1996) 84 F.3d 1162,

24  prevent a plaintiff from avoiding summary judgment by simply producing an

25  expert report or declaration that an officer's conduct leading up to a deadly

26  confrontation was imprudent or inappropriate.  Rather, the Court must decide as

27  a matter of law "whether a reasonable officer could have believed that his

28  conduct was justified." Billington, supra, 292 F.3d at 1189.  Here, Officer

15

1    GARCIA's conduct was justified as he believed that the decedent would retrieve

2    a gun from his pocket and shoot at GARCIA to either seriously injure or kill him.

3         For a civil rights violation to exist, more than mere negligence must be

4    proved. <u>Daniels v. Williams</u> (1986) 474 US 327, 328.  Plaintiffs cannot prove a

5    constitutional deprivation of their civil rights.  The 4th Amendment's

6    "reasonableness" standard is not the same as the standard of "reasonable care"

7    under tort law. <u>Daniels</u>, <u>supra</u>, 474 US at 332–333 (distinguishing constitutional

8    deprivations from negligently inflicted injuries).  Negligent acts do not incur

9    constitutional liability. <u>Daniels</u>, <u>supra</u>, 474 US at 333 (holding that "injuries

10   inflicted by governmental negligence are not addressed by the United States

11   Constitution").  An officer may fail to exercise "reasonable care" as a matter of

12   tort law yet still be a constitutionally "reasonable" officer.  Thus, even if an

13   officer is negligent, that negligent act will not transform an otherwise reasonable

14   act into a Fourth Amendment violation. <u>Billington v. Smith</u> (9th Cir. 2002) 292

15   F3d 1177, 1190.

16        Summary judgment should be granted on the 4th Amendment claim.

17   **VII.  14th AMENDMENT-OFFICER'S CONDUCT DOES NOT "SHOCK THE CONSCIENCE"**

18

19        As the Supreme Court made clear in <u>Lewis</u>, only official conduct that

20   "shocks the conscience" violates substantive due process under the Fourteenth

21   Amendment. <u>County of Sacramento v. Lewis</u> (1998) 523 U.S. 833, 846, 118

22   S.Ct. 1708.  The Court treats the "shocks the conscience" test as one involving "a

23   purpose to harm." <u>Porter v. Osborn</u> (9th Cir. 2008) 546 F.3d 1131, 1137.

24        Where a police officer faces "fast paced circumstances presenting

25   competing public safety obligations, the purpose to harm standard must apply."

26   <u>Porter</u>, <u>supra</u>, 546 F.3d at 1139.  Such circumstances require officers to make

27   "repeated split-second decisions about how best to apprehend [a] fleeing suspect

28   in a manner that will minimize risk to their own safety." <u>Bingue v. Prunchak</u> (9th

1  Cir. 2008) 512 F.3d 1169, 1176.

2      The "purpose to harm" standard applies in this case.  Indeed, the facts of

3  Porter and the arguments addressed by the Court in that case demonstrate such.

4  In Porter, the entire confrontation between the police officer and the decedent

5  took 5 minutes.  Porter, supra, 546 F.3d at 1139.  The officer was on scene in

6  order to investigate a suspicious vehicle parked at the side of the road in which

7  the decedent was located.  Porter, supra, 546 F.3d at 1133-1134.  When the

8  decedent began driving his car away from the scene, the officer had already

9  pepper-sprayed the decedent, and he was driving at a slow speed and likely did

10  not pose a serious threat to any of the officers present.  Porter, supra, 546 F.3d at

11  1335.  The officer at the scene at no point reported seeing the decedent with a

12  gun, and no weapon was recovered from the car.  Id.  Faced with these facts, this

13  Court held that actual deliberation was not practical where a 5-minute altercation

14  between officers and the suspect evolved quickly and forced the officers to make

15  "repeated split-second decisions" requiring an application of the "purpose to

16  harm" standard.  Porter, supra, 546 F.3d at 1139.  This Court found the events

17  were "in constant flux" and rapidly evolving, requiring an application of the

18  "purpose to harm" standard.  Porter, supra, 546 F.3d at 1140.

19      Here, it is undisputed that Officer GARCIA tried to stop decedent for only

20  a matter of seconds.  This is as volatile as the facts presented in Porter.  Thus, the

21  issue is whether Officer GARCIA's conduct "shocks the conscience" pursuant to

22  the "purpose to harm" standard.

23      Under the "purpose to harm" standard, there is no substantive due process

24  violation unless Plaintiffs can show that Officer GARCIA's purpose in shooting

25  decedent was "to cause harm unrelated to the legitimate object of arrest." Lewis,

26  523 US at 836, 118 S.Ct. 1708.

27      Here, Officer GARCIA's decision to use lethal force occurred: (1) under

28  rapidly evolving circumstances; (2) after he ordered decedent to stop and show

17

1   his hands; and (3) when he was in imminent danger of being seriously injured or

2   killed from being shot.

3       Thus, it is clear that Officer GARCIA had no purpose to harm when he

4   shot decedent unrelated to his legitimate objective of self-defense.  MacEachern,

5   supra, 623 FS2d at 1099-1101 [decedent's mother brought §1983 action against

6   city and police officer, court held officer's use of deadly force was not carried

7   out with purpose to harm decedent unrelated to officer's legitimate objective to

8   make arrest].

9       In a rapidly evolving, fluid and dangerous predicament which precludes

10  the luxury of calm and reflective pre-response deliberation, a police officer's

11  actions "shock the conscience" only if they involved force employed

12  "maliciously and sadistically for the very purpose of causing harm."  Claybrook

13  v. Birchwell (6th Cir. 2000) 199 F.3d 350, 359 quoting Lewis, supra, 118 S.Ct. at

14  1720.

15      The "malicious or sadistic" test of 14th Amendment conscience-shocking

16  behavior controls this case because Officer GARCIA had no opportunity to

17  ponder or debate his reaction to the dangerous actions of the decedent reaching

18  into his pocket.  Claybrook, supra, 199 F3d at 359-360.

19      Thus, Officer GARCIA did not violate Plaintiffs' substantive due process

20  rights when he shot decedent because he was responding to an imminent threat

21  and did not intend to commit any harm unrelated to the legitimate use of force

22  necessary to protect himself.

23      It is insufficient to demonstrate intent to harm unrelated to a legitimate law

24  enforcement objective merely by asserting that Officer GARCIA shot decedent.

25  Wilkinson, supra, 610 F.3d at 554.  Because Plaintiffs cannot point to any

26  evidence that Officer GARCIA had a purpose to harm other than the shooting

27  itself, they cannot show a 14th Amendment violation.  Id.

28      Thus, Officer GARCIA did not violate Plaintiffs' substantive due process

18

1   rights when he shot decedent because he was responding to an imminent threat

2   and did not intend to commit any harm unrelated to the legitimate use of force

3   necessary to protect himself.  The Court should grant summary judgment on

4   Plaintiffs' 14th Amendment claim.

5   **VIII.  NO MONELL LIABILITY**

6         Plaintiffs also allege that the City failed to train its police officers in the

7   use of deadly force.  In <u>City of Canton v. Harris</u> (1989) 489 US 378, 388, 109

8   S.Ct. 1197, the Supreme Court extended municipal liability under §1983 to cases

9   in which officers are inadequately trained, but "only where the failure to train

10   amounts to deliberate indifference to the rights of persons with whom the police

11   come into contact."  In an inadequate training case, Plaintiffs must demonstrate

12   that the training used was the result of "a decision to adopt [a] particular course

13   of action."  <u>Oviatt v. Pierce</u> (9th Cir. 1992) 954 F2d 1470, 1477, citing <u>Pembaur</u>

14   <u>v. City of Cincinnati</u> (1986) 475 US 469, 481, 106 S.Ct. 1292,

15   1299.  There is no evidence that Officer GARCIA was inadequately trained with

16   regard to the use of deadly force.

17         It will not suffice to prove the City's liability that this shooting could have

18   been avoided if the officer had had more training.  Such a claim could be made

19   about any encounter resulting in injury, yet not condemn the adequacy of the

20   training program to enable officers to respond properly to the usual and recurring

21   situations with which they must deal.  Also, adequately trained officers

22   occasionally may make mistakes; the fact that they do says little about the

23   training program or the legal basis for holding the City liable.  <u>City of Canton,</u>

24   <u>Ohio v. Harris</u> (1989) 489 US 378, 390-391, 109 S. Ct. 1197, 1206.  Permitting a

25   case against a City on lesser standards of fault would result in de facto

26   respondeat superior liability, which the Supreme Court rejected in <u>Monell v.</u>

27   <u>New York City Dept. of Social Services</u> (1978) 436 US 658, 693-694, 98 S.Ct.

28   2018, 2037.

1    Consequently, the City's alleged failure to provide training can only yield

2    liability where Plaintiffs prove that the City's failure to train reflects deliberate

3    indifference to the constitutional rights of its inhabitants. Canton, supra, 489 US

4    at 392, 109 S.Ct. at 1206. There is no evidence that Officer GARCIA was

5    inadequately trained on the use of deadly force. Further, "[p]roof of a single

6    incident of [alleged] unconstitutional conduct is not sufficient to impose liability

7    under Monell." City of Oklahoma v. Tuttle (1985) 417 US 808, 823-824.

8    Plaintiffs cannot hold the City liable for the shooting unless it took place

9    as a result of an unlawful City custom, policy or practice. Monell v. Dept. of

10   Social Services (1978) 436 US 658. A local governmental entity cannot be held

11   liable under §1983 on a respondeat superior theory. There is no vicarious

12   liability. Collins v. Harker Heights (1992) 503 US 115, 122. A City may be

13   held liable under §1983 only for a deprivation of rights inflicted pursuant to

14   official policy or custom. Bryan County Commissioners Court v. Brown (1997)

15   520 US 397, 403; City of St. Louis v. Praprotnik (1988) 485 US 112, 122-128;

16   Pembaur, supra, 475 US at 478-484.

17   Plaintiffs' claim against the City fails absent proof that the City had a

18   policy or practice that showed deliberate disregard for Plaintiffs' constitutional

19   rights, or proof that a City policy or practice was the moving force behind any

20   constitutional violation. Gibson v. County of Washoe (9th Cir. 2002) 290 F3d

21   1175, 1185. It is not enough for Plaintiffs merely to identify conduct properly

22   attributable to the local government as "policy" or "conduct." Plaintiffs must

23   prove that: (1) the City's actions were taken with the requisite degree of

24   culpability, i.e., deliberate indifference; and (2) there is a direct causal link

25   between the City's action, policy or custom and the alleged deprivation of a

26   federal right. Bryan County Commissioners Court, supra, 520 US at 404. Here,

27   there is no evidence of any policy, custom or causal connection between any

28   policy of the City (or lack of policy) and the shooting. This shooting took place

1   because decedent was fleeing from a pursuing officer, not because of any

2   unconstitutional City custom, policy or practice.  Thus, it cannot be said that

3   Officer GARCIA was inadequately trained on the use of deadly force.

4         In <u>Thompson v. City of Los Angeles</u> (9th Cir. 1989) 885 F2d 1439, 1444,

5   the court noted that: "proof of random acts or isolated events are insufficient to

6   establish custom" within meaning of <u>Monell</u>.  Here, Plaintiffs cannot show that

7   this shooting established a City custom.  To prove the City had an

8   unconstitutional custom that was the "moving force" behind violating Plaintiffs'

9   civil rights, they must prove other City acts committed against persons in a

10   position similar to Plaintiffs.  <u>Canton</u>, <u>supra</u>, 489 US at 398, 109 S.Ct. 1197;

11   <u>Oviatt v. Pierce</u> (9th Cir. 1992) 954 F2d 1470, 1478.  Plaintiffs cannot do so.

12   **IX.  WRONGFUL DEATH & 4TH AMENDMENT CLAIMS**

13   **REQUIRE  IDENTICAL ANALYSIS**

14         Plaintiffs' claim for wrongful death under CCP § 377.60 is essentially for

15   negligence, and it fails because Officer GARCIA's use of force was reasonable

16   under all of the circumstances here, especially in light of the "split second

17   judgment" he was forced to make.  Officer GARCIA is also entitled to statutory

18   immunity for his actions, and for this additional reason there can be no recovery

19   against him or the City for this shooting.

20         Under California law, the negligence issue in a plaintiff's wrongful death

21   claim arising from an officer's use of deadly force hinges on whether the

22   officer's actions were objectively reasonable, from the perspective of a

23   reasonable officer on the scene, taking into account the facts and circumstances

24   confronting him.  <u>Hernandez v. City of Pomona</u> (2009) 46 C4th 501, 513.  This

25   inquiry has been held to be precisely the same as that required under the Fourth

26   Amendment analysis, i.e., a consideration of the totality of the circumstances

27   facing the officer.  <u>Id</u>. at 513-514.  Accordingly, Defendants are entitled to

28   summary judgment on this claim because decedent posed a significant and

21

1  immediate threat to GARCIA's safety, justifying the use of force under these

2  circumstances.

3         California Govt. Code §820.2 provides that "a public employee is not

4  liable for an injury resulting from his act or omission where the act or omission

5  was the result of exercise of the discretion vested in him, whether or not such

6  discretion be abused."  Cal. Govt. Code §820.2.  Section 820.2 affords police

7  officers immunity on a wrongful death claim unless they used excessive force.

8  Price v. County of San Diego (SD CA 1998) 990 FS 1230, 1244.  Moreover, in

9  actions involving claims under state law, an officer's use of deadly force is

10  privileged as a matter of law if he reasonably fears for his safety.  Reynolds v.

11  County of San Diego (SD CA 1994) 858 FS 1064, 1074, aff'd in part and rev'd

12  in part on other grounds, 84 F3d 1162 (9th Cir. 1996); People v. Rivera (1992) 8

13  CA4th 1000, 1007 (police officers are privileged to use force against assailants

14  when the officers reasonably believe the assailants to be armed, and when

15  officers reasonably believe their own safety is in jeopardy).  The Rivera case is

16  particularly instructive here because the use of force was found justified by the

17  officer's reasonable fear for his safety even though the suspect turned out to be

18  unarmed.  Id.  Here, Officer GARCIA is entitled to immunity from the state law

19  claim because his actions and fear for his own safety were objectively

20  reasonable.

21         Lastly, California law provides that a city cannot be liable for the acts of

22  its employee if the employee is immune from liability.  Govt. Code §815.2.

23  Because Officer GARCIA is immune from liability, there can be no liability on

24  the City's part.  Foster v. City of Fresno (ED CA 2005) 392 FS2d 1140, 1159.

25  **X. BATTERY CLAIM-OFFICER USED REASONABLE FORCE**

26         A plaintiff bringing a battery action against a police officer has the burden

27  of proving unreasonable force as an element of the tort.  Edson v. City of

28  Anaheim (1998) 63 CA4th 1269, 1272, 74 CR2d 614.  Excessive force claims

1   are analyzed under the "reasonableness" standard.  The test of reasonableness is

2   this context is an objective one, viewed from the vantage of a reasonable officer

3   on the scene.  Martinez v. County of Los Angeles (1996) 47 CA4th 334, 343, 54

4   CR2d 772.

5        The Plaintiffs are seeking recovery for wrongful death.  However, that

6   claim is contingent on the battery claim.  If the Court finds that the officers'

7   conduct was objectively reasonable, then this bars a negligence action premised

8   upon violation of the same right.  City of Simi Valley v. Sup.Ct. (2003) 111

9   CA4th 1077, 1084, 4 CR2d 468, 473.  The wrongful death claim is derivative of

10  the battery claim.  As Officer GARCIA acted with reasonable force, these claims

11  cannot survive.

12       Because Officer GARCIA is not liable, there is no basis for respondeat

13  superior liability against the City.  Govt. Code §815.2 (public entity not liable for

14  employee's acts if employee is immune).  Martinez, supra, 47 CA4th at 349-350,

15  54 CR2d at 780.  The calculus of reasonableness must embody allowance for the

16  fact that police officers are often forced to make split-second judgments in

17  circumstances that are tense, uncertain, and rapidly evolving about the amount of

18  force that is necessary in a particular situation.  Id.

19       The court in Martinez applied the reasonableness standard in an action

20  against sheriff's deputies who fatally shot a knife-wielding man who was

21  advancing toward them.  Martinez, supra, 47 CA4th 334.  Martinez examined the

22  facts and held that the sheriff's deputies were protected by state law immunity

23  and entitled to judgment on the wrongful death claim.  Id. at 349.

24       The Martinez case held on objective reasonableness:

25       "An officer may reasonably use deadly force when he or she confronts an

26  armed suspect in close proximity whose actions indicate an intent to attack.  In

27  these circumstances, the Courts cannot ask an officer to hold fire in order to

28  ascertain whether the suspect will, in fact, injure or murder the officer.  The high

1  numbers of officer mortalities in recent years illustrates the unreasonableness of

2  such a notion...." <u>Martinez</u>, supra, 47 CA4th at 345.

3      The actions of Officer GARCIA are likewise justified in this case.  As

4  stated in <u>Martinez</u>, "Shooting a man who has told you, in effect, that he is going

5  to use deadly force against you and then moves toward you as if to do so is

6  unquestionably an act of self-defense even if ... the man is attempting 'suicide by

7  police.'" 47 CA4th at 345.  It was objectively reasonable for Officer GARCIA

8  to use deadly force in response to decedent's life-threatening actions by reaching

9  into his pocket for a 2nd gun.

10      The test of reasonableness is objective, as viewed from the vantage point

11  of a reasonable officer on the scene.  <u>Martinez</u>, supra, 47 CA4th at 343.  It is also

12  highly deferential to the police officers' need to protect themselves. <u>Ibid</u>.

13      Officer GARCIA reasonably believed decedent was going to seriously hurt

14  or kill him.  In light of an officer's authority to use reasonable force to effect an

15  arrest, prevent an escape, or overcome resistance (Penal Code §835a), and the

16  circumstances confronting Officer GARCIA at the time he encountered decedent,

17  their use of force was objectively reasonable.

18      Courts "surround the police who make these on-the-spot choices in

19  dangerous situations with a fairly wide zone of protection in close cases...."

20  <u>Martinez</u>, supra, 47 CA4th at 344; <u>Edson</u>, supra, 63 CA4th at 1273-1274.  Courts

21  "must never allow the theoretical, sanitized world of our imagination to replace

22  the dangerous and complex world that policemen face every day.  What

23  constitutes 'reasonable' action may seem quite different to someone facing a

24  possible assailant than to someone analyzing the question at leisure." <u>Martinez</u>,

25  supra, 47 CA4th at 343.

26      As Decedent reached for a 2nd weapon in his pocket, Officer GARCIA in

27  fear for his life from being shot, reasonably shot decedent in self-defense.

28  Plaintiffs' battery claims thus fails.

1  **XI.   CONCLUSION**

2         Officer GARCIA only shot decedent because he was reaching into his

3  pocket and was capable of retrieving a gun inflicting serious bodily injury or

4  death.  Officer GARCIA had to make a split-second decision.  He was faced with

5  the dilemma of acting decisively, under tremendous pressure and clearly without

6  the benefit of a second chance, when decedent continued to reach into his pocket

7  after he ordered decedent 3 times to stop and show his hands.  Here, the

8  undisputed evidence clearly shows that Officer GARCIA shot decedent in self-

9  defense.  Thus, Officer GARCIA's actions were reasonable.

10        The Court should grant Defendants' motion for summary judgment on all

11 claims.

12 Dated:  July 5, 2013                    MICHAEL R.W. HOUSTON, CITY
                                                  ATTORNEY
13

14
                                         By:
15                                          Moses W. Johnson, IV
                                            Assistant City Attorney
16                                          Attorneys for Defendant
                                            CITY OF ANAHEIM, and CITY OF
17                                          ANAHEIM erroneously sued as
                                            ANAHEIM POLICE DEPARTMENT
18                                          and DAVID GARCIA

19

20

21

22

23

24

25

26

27

28 96227v1