1  MICHAEL R.W. HOUSTON
   CITY ATTORNEY
2  MOSES W. JOHNSON, IV
   Assistant City Attorney
3  E-mail: mjohnson@anaheim.net
   200 S. Anaheim Boulevard, Suite 356
4  Anaheim, California  92805
   Tel: (714) 765-5169 Fax: (714) 765-5123
5
   Attorneys for Defendants CITY OF
6  ANAHEIM, and CITY OF ANAHEIM
   erroneously sued as ANAHEIM POLICE
7  DEPARTMENT and DAVID GARCIA

8           UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

11 BARBARA PADILLA AND            Case No.:   SACV12-622 JVS(JPRx)
   MARIO CEJA,
12
            Plaintiffs,
13                                DEFENDANTS' REPLY TO
   v.                            OPPOSITION TO MOTION FOR
14                                SUMMARY JUDGMENT AND/OR
   CITY OF ANAHEIM, ANAHEIM      PARTIAL SUMMARY JUDGMENT
15 POLICE DEPARTMENT, AND
   DOE OFFICERS OF THE           DATE:     August 5, 2013
16 ANAHEIM POLICE                TIME:     1:30 p.m.
   DEPARTMENT, AND DOES 1        CTRM:     10C
17 through 10, Inclusive,,

18          Defendants.          TRIAL DATE:          9/24/13

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3   I.    INTRODUCTION .................................................................................. 1

4   II.   UNDISPUTED FACTS ........................................................................ 2

5   III.  NO NEED TO DISPROVE OPPONENTS' CASE .................................. 5

6   IV.   FORCE USED WAS REASONABLE ................................................... 6

7   V.    NO PURPOSE TO HARM UNDER 14TH AMENDMENT ...................... 9

8   VI.   NO MONELL LIABILITY-CONCEDED BY PLAINTIFFS ................... 10

9   VII.  CONCLUSION ................................................................................. 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

The moving party bears the burden of informing the Court of the basis for its motion and identifying those aspects of the matter which it believes indicate an absence of a genuine issue of material fact. Celotex Corporation v. Catrett (1986) 477 US 317.  Once the defendants moving party have identified the parts of the Plaintiffs case where there is no genuine issue, the burden shifts to the Plaintiffs as the responding parties to set forth specific facts showing the existence of a genuine issue of material fact. Anderson v. Liberty Lobby Inc. (1986) 477 US 242.  Plaintiffs must set forth specific facts showing that there is a genuine issue for trial. Hansen v. Black (9th Cir. 1989) 885 F2d 642, 644.

In short, to avoid summary judgment, Plaintiffs must "produce at least some significant probative evidence tending to support the Complaint." Smolen v. Deloitte, Haskins & Sells (9th Cir. 1990) 921 F2d 959, 963.  Given the matter at issue here, this requires Plaintiff to produce evidence that the shooting constituted excessive force and was effectuated for the purpose of causing harm unrelated to any legitimate law enforcement purpose.  Plaintiffs cannot show a purpose to harm because the evidence establishes that the Officer's actions were reasonable.

The facts establish that Officer GARCIA shot Plaintiff in self-defense because Plaintiff refused to show his hands and was reaching into his pocket, and Officer GARCIA reasonably believed decedent was going to retrieve a gun to shoot and kill Officer GARCIA or seriously injure him.

Summary judgment is appropriate when the facts concerning the incident are largely undisputed.  Plaintiffs accept Defendants facts up to the point that decedent fell on the grassy area where the shooting occurred.  Opposition, 2:25-27.  Plaintiffs also concede that decedent ran from Officer Garcia.  Opposition 6:6-7.  Thus, based on Plaintiffs' opposition, the undisputed facts are as set forth below.

## II.   UNDISPUTED FACTS

1.     On November 4, 2011, at 11:54 am, APD Officer DAVID GARCIA was assigned as a single-man patrol officer.  Officer GARCIA was driving his marked patrol unit westbound on Ball Rd., west of Belhaven St.  This area is known to have problems with gangs and drug trafficking.  Officer GARCIA observed 3 males, including MARCEL CEJA, walking west on the north sidewalk, also west of Belhaven St.  They were wearing baggy sweatshirts with their hoods pulled over their heads.  Officer GARCIA made eye contact with 1 of the males, but continued driving west on Ball Rd.

2.     As Officer GARCIA drove by, he decided to make contact with the 3 males.  He drove around the block by turning north on State College Blvd., turned east on Almont Ave., and turned south on Belhaven.  When he returned to Ball Rd., he looked westbound but did not observe the males.  He looked eastbound and observed 3 males, later identified as EDWIN SALINAS, JOSE GONZALEZ and MARCEL LUIS CEJA, walking east on the north sidewalk of Ball Rd., east of Belhaven.  They had changed direction.  Officer GARCIA believed SALINAS, GONZALEZ and CEJA were the same males he had originally observed walking west on Ball Rd.

3.     Officer GARCIA drove eastbound in the westbound lanes of Ball Rd. and parked along the north curb in the 2300 block of E. Ball Rd.  He parked west of the alley, located on the west side of the Casa Madrid Apartment complex, located at 2301 E. Ball Rd.  He grabbed his baton, which was wedged between the center console and driver's seat, and exited his patrol car.

4.     SHELLY SORENSON, a local resident, was trying to turn into the west alley of the Casa Madrid Apartments, but had to wait for CEJA and his 2 companions GONZALEZ and SALINAS to cross the driveway before commencing her turn into the alley.  She observed a police car stopped along the north curb, west of the alley.  CEJA, and his companions GONZALEZ and

2

1  SALINAS looked westbound toward the police car; however, they continued

2  walking eastbound.

3       5.    Officer GARCIA, wearing an APD police uniform, walked toward

4  CEJA and his companions GONZALEZ and SALINAS.

5       6.    CEJA, GONZALEZ and SALINAS looked at Officer GARCIA and

6  were 10 to 12 feet east of him.  Officer GARCIA said, "Hi, do you mind if I talk

7  to you for a second?"  CEJA turned and walked toward him as the other 2,

8  GONZALEZ and SALINAS, continued walking east.  Officer GARCIA

9  observed a large tattoo on the front of CEJA's neck.

10       7.    Officer GARCIA focused his attention toward CEJA's 2

11  companions, GONZALEZ and SALINAS.  Then, when CEJA was 5 to 7 feet

12  away from Officer GARCIA, CEJA turned to the other 2, and then CEJA ran

13  away east along the north sidewalk.  Officer GARCIA noticed CEJA had put his

14  right hand inside his right sweatshirt pocket as he chased after CEJA.  Officer

15  GARCIA yelled, "Stop, police."  Officer GARCIA advised dispatch, via his

16  police radio, that he was in a foot pursuit.  CEJA ran eastbound, past

17  GONZALEZ and SALINAS, and into the westbound traffic lanes.

18       8.    CEJA ran onto the north sidewalk and into the Casa Madrid

19  Apartment Complex parking lot/carport area.  CEJA looped back westbound, and

20  during the chase Officer GARCIA was 7 to 10 feet behind CEJA.

21       9.    As CEJA continued running west, CEJA removed his right hand

22  from his sweatshirt pocket, which was holding a chrome handgun.  Officer

23  GARCIA yelled at CEJA to get down on the ground; however, CEJA continued

24  running west on the grass north of the sidewalk.

25       10.    Officer GARCIA observed CEJA stumble forward onto the grass,

26  the handgun flew from CEJA's hand and tumbled into the shrubbery, a couple

27  feet away from CEJA.  Officer GARCIA stopped and was standing 4 to 5 feet

28  ///

1    away from CEJA, who was on the ground.  CEJA assumed a seated position,

2    turned toward Officer GARCIA.

3        11.    JAMES CLEMENTS was driving westbound on Ball Rd. and saw

4    Officer GARCIA chasing CEJA.  He looked back over his right shoulder in the

5    "three o'clock" position, and he observed Officer GARCIA to be verbalizing

6    orders to CEJA.  He observed CEJA fall onto a sloped grassy area.  He observed

7    Officer GARCIA pointing his gun at CEJA as he was seated on the grass.  He

8    could not hear what was being said because the car windows were rolled up as he

9    was driving by, but he observed the Officer's lips moving while his gun was

10   pointed at CEJA.  CEJA appeared to be uncooperative and angry as he was

11   moving around, looking around, and yelling something at Officer GARCIA.

12   CLEMENTS temporarily lost sight of them because an electrical box blocked his

13   view as he drove by.  During that time, he heard 2 shots.  He looked at his watch

14   and it was 11:55 am.

15       12.    DIANE SILVA, a resident in the area, was at home sitting on her

16   living room couch when she heard yelling outside.  She heard 2 different voices

17   involved, and she described the yelling as "Intense."  SILVA walked toward the

18   sliding glass door, located on the south wall of the apartment, which faced Ball

19   Rd.

20       13.    SILVA observed Officer GARCIA, with his weapon drawn,

21   walking diagonally in a northwest direction.  From her vantage point, she could

22   see Officer GARCIA, but not CEJA.  Officer GARCIA stepped onto the grass

23   between the curb and the sidewalk.  Officer GARCIA continued walking and

24   pointing his weapon in a northwest direction, but due to her obstructed view,

25   SILVA was unable to see who Officer GARCIA was pointing his weapon at.

26       14.    Officer GARCIA was yelling commands the entire time, "Stop."

27   SILVA did not understand what was being said by CEJA, but his voice was loud

28   and she believed he was shouting obscenities.

4

1    15.    SILVA observed Officer GARCIA step onto the sidewalk from the

2  grass, and he continued to walk in a northwest direction.  SILVA heard what she

3  believed to be Officer GARCIA's commands for the 3rd time prior to the

4  shooting.

5    16.    Due to CEJA ignoring his commands, GARCIA fired 2 rounds,

6  striking CEJA.

7  **III.    NO NEED TO DISPROVE OPPONENTS' CASE**

8    Plaintiffs bear the burden of proof at trial to prove their civil rights claims.

9  There is no need to offer evidence to disprove matters on which the Plaintiffs

10  have the burden of proof at trial.  Celotex Corp. v. Catrett (1986) 477 US 317,

11  323, 106 S.Ct. 2548, 2553; Crawford v. Countrywide Home Loans, Inc. (7th Cir.

12  2011) 647 F3d 642, 648.  "A complete failure of proof concerning an essential

13  element of the nonmoving party's case necessarily renders all other facts

14  immaterial."  Celotex, supra, 477 US at 323, 106 S.Ct. at 2552.  "Summary

15  judgment for a defendant is appropriate when the plaintiff fails to make a

16  showing sufficient to establish the existence of an element essential to that

17  party's case, and on which that party will bear the burden of proof at trial."

18  Celotex, supra, 477 US at 322, 106 S.Ct. at 2552; Johnson v. Hix Wrecker

19  Service, Inc. (7th Cir. 2011) 651 F3d 658, 662.

20    "Where the nonmoving party will bear the burden of proof at trial on a

21  dispositive issue, … the nonmoving party [must] … by [his] own affidavits, or

22  by the depositions … designate 'specific facts showing that there is a geniunce

23  issue for trial.'"  Celotex, supra, 477 US at 323-324, 106 S.Ct. at 2553; Federal

24  Ins. Co. v. Burlington Northern & Sante Fe Ry. Co. (CD CA 2003) 270 FS2d

25  1183, 1185.  Plaintiffs must demonstrate a "genuine" dispute as to a "material"

26  fact on all matters as to which it has the burden of proof.  Celotex, supra, 477 US

27  at 324, 106 S.Ct. 2553; Lane v. Department of Interior (9th Cir. 2008) 523 F3d

28  1128, 1140 (argument insufficient to defeat summary judgment motion).

1    Simply arguing the moving parties declarations "should be disregarded as

2    self-serving" will not avoid summary judgment.  "Mere denials" do not meet the

3    Plaintiff's burden of showing a genuine issue of material fact.  <u>Gassaway v.</u>

4    <u>Northern Mut. Life Ins. Co.</u> (9th Cir. 1994) 26 F3d 957, 960.  Summary judgment

5    is not to be regarded as a "disfavored procedural shortcut."  <u>Celotex</u>, <u>supra</u>, 477

6    US at 327, 106 S.Ct. 2555.

7    **IV.    FORCE USED WAS REASONABLE**

8        "[D]efendants … win on summary judgment if the district court concludes

9    … that the officer's use of force was objectively reasonable under the

10    circumstances." <u>Scott v. Henrich</u> (9th Cir. 1994) 39 F3d 912, 915.

11        The alleged Fourth Amendment violation is determined under the factors

12    set forth in <u>Graham v. Connor</u> (1989) 490 U.S. 386, 395-397, and <u>Graham's</u>

13    instruction that the "reasonableness" of a particular use of force must be judged

14    from the perspective of a reasonable officer on the scene.  <u>Id</u>. at 396-397.  All

15    legitimate evidence must be considered in the assessment of reasonableness, but

16    under the law the focus of that inquiry is to determine the officer's perception of

17    the circumstances he faced when he decided to use lethal force.  As the Ninth

18    Circuit observed recently:  "we must view the facts from [the officer's]

19    perspective at the time he decided to fire … the critical inquiry is what [the

20    officer] perceived." <u>Wilkinson v. Torres</u> (9th Cir. 2010) 610 F3d 546, 551.

21        Thus, with regard to the first <u>Graham</u> factor, i.e., "the severity of the

22    underlying offense," the Officer GARCIA was investigating decedent's

23    suspicious behavior.  Nothing in the law requires confirmation of a prior violent

24    act before an officer is permitted to defend himself, especially when the suspect

25    is reaching for a deadly weapon.

26        Moreover, under Fourth Amendment jurisprudence, "the most important

27    single element" in the <u>Graham</u> analysis is "whether the suspect pose[d] an

28    ///

1  immediate threat to the safety of the officers or others." Chew v. Gates (9th Cir.

2  1994) 27 F3d 1432, 1441.

3  Under the Fourth Amendment, "an officer's use of force must be

4  objectively reasonable based on his contemporaneous knowledge of the facts."

5  Deorle v. Rutherford (9th Cir. 2001) 272 F3d 1272, 1281.  The Officer shot

6  decedent because he was reasonably afraid that decedent would shoot him and

7  seriously hurt or kill him.

8  The Opposition argues that a factual dispute exists regarding whether

9  Plaintiff was reaching into his pocket because they contend his hands were up.

10  The officer perceived decedent to be reaching into his pocket for a

11  weapon.  The Officer was forced to make split-second decision.  Nothing in the

12  law suggests that the Officer's perception that he was in imminent danger was

13  unreasonable.  The Officer believed decedent was going to shoot him, seriously

14  injuring or killing him, and his belief was reasonable.

15  The case of Chappell v. City of Cleveland (6th Cir. 2009) 585 F3d 901,

16  found the officers' conduct objectively reasonable when the decedent was

17  wielding a steak knife and 5 to 7 feet away thereby making the threat of injury

18  imminent.  The Officer gave warnings before firing on the decedent by ordering

19  him to show his hands as he was reaching into his pocket.  Thus, the officer

20  reasonably feared imminent injury.

21  Lastly, with regard to the third Graham factor, i.e., whether the suspect is

22  actively resisting arrest, decedent did not submit to the Officer's authority, and

23  instead he was reaching for a weapon.  The Officer did not have any reason to

24  believe that decedent was consenting to an arrest, and, accordingly, this factor

25  also supports the reasonableness of the Officer's use of force.  The Officer shot

26  decedent in self-defense.

27  Under Penal Code §835(a), a police officer may use reasonable force to

28  affect an arrest and need not retreat or desist from his efforts by reason of the

7

1  suspect's resistance.

2  Plaintiffs may not "establish a Fourth Amendment violation based merely

3  on bad tactics that result in a deadly confrontation that could have been avoided."

4  Billington v. Smith (9th Cir. 2002) 292 F3d 1177, 1190; Scott v. Henrich (9th Cir.

5  1994) 39 F3d 912, 915 (police officers need not avail themselves of the least

6  intrusive means of responding); Reynolds v. County of San Diego (9th Cir. 1996)

7  84 F3d 1162, 1168 (distinguishing Alexander, because "the court must allow for

8  the fact that officers are forced to make split second decisions.").

9  "A police officer may reasonably use deadly force where he 'has probable

10  cause to believe that the suspect poses a threat of serious physical harm, ... to the

11  officer.'" Billington, supra, 292 F3d at 1184. "[I]f the suspect threatens the

12  officer with a weapon ..., deadly force may be used if necessary ...." Tennessee

13  v. Garner (1985) 471 US 1, 11-12, 105 S.Ct. 1694; Smith v. City of Hemet (9th

14  Cir. 2005) 394 F3d 689, 704 ("where a suspect threatens an officer with a

15  weapon such as a gun … the officer is justified in using deadly force");

16  Reynolds, supra, 84 F3d at 1168 (9th Cir.1996) (held deadly force reasonable).

17  Officers "need not avail themselves of the least intrusive means of

18  responding" but rather must only act "within that range of conduct we identify as

19  reasonable." Scott v. Henrich (9th Cir. 1994) 39 F3d 912, 915.

20  Lastly, Plaintiff cannot avoid summary judgment by simply producing an

21  expert report or declaration trying to show that an officer's conduct was

22  imprudent or inappropriate. Rather, the Court must decide as a matter of law

23  "whether a reasonable officer could have believed that his conduct was justified."

24  Billington v. Smith (9th Cir. 2002) 292 F3d 1177, 1189. Here, the Officer acted

25  reasonably in shooting decedent when he was reaching into his pocket. At best,

26  Plaintiffs have shown a triable issue of fact as to whether decedent was reaching

27  into his pocket or had his hands up.

28

## V.   NO PURPOSE TO HARM UNDER 14TH AMENDMENT

The facts show how fast this incident occurred.  The Officer did not have time for the deliberation required to impose liability as argued by Plaintiffs.

County of Sacramento v. Lewis (1998) 523 US 833, 118 S.Ct. 1708, turned on whether police officers had the opportunity for actual deliberation. Thus, in Moreland, a case involving an inadvertent shooting of a bystander, the Ninth Circuit emphasized that "the critical consideration [is] whether the circumstances are such that 'actual deliberation is practical.' "  Moreland v. Las Vegas Metro. Police Dep't (9th Cir. 1988) 159 F3d 365, 371 (quoting Lewis, 523 US at 851).  The Ninth Circuit and other courts have repeatedly put emphasis on this "critical consideration" in deciding the level of culpability to apply under the shocks the conscience test and have declined to parse an officer's intentions. Davis v. Township of Hillside (3rd Cir. 1999) 190 F3d 167, 170 ("Nothing in Lewis suggests that courts are free to second-guess a police officer's decision to initiate [contact with] a suspect so long as the officers were acting in the service of a legitimate governmental objective.").  Otherwise the Court would wind up parsing an officer's "repeated split-second decisions about how best to apprehend the fleeing suspect in a manner that will minimize risk to [his] own safety and the safety of the general public." Id. at 1176.  Lewis and the Ninth Circuit cases therefore require that when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard applies.  Porter v. Osborn (9th Cir. 2008) 546 F3d 1131, 1138-1139. "Where a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a **purpose to harm unrelated to legitimate law enforcement objectives."** Wilkinson v. Torres (9th Cir. 2010) 610 F3d 546, 554 (Emphasis added).

Here, within the span of a few seconds, Officer Garcia had to make snap judgments to encounter decedent ending in a shooting so the purpose to harm

1   standard applies.  As Officer Garcia was attempting to stop a suspected gang

2   member, he was acting in the service of a legitimate governmental objective.

3   Thus, Defendants motion should be granted as to Plaintiff's 14th Amendment

4   claim.

5   **VI.    NO MONELL LIABILITY-CONCEDED BY PLAINTIFFS**

6           Plaintiffs concede and agreed to withdraw their <u>Monell</u> claims.

7   Opposition 10:13-17.  Partial summary judgment should be granted.

8   **VII.   CONCLUSION**

9           Officer GARCIA only shot decedent because he was reaching into his

10  pocket and was capable of retrieving a gun inflicting serious bodily injury or

11  death.  Officer GARCIA had to make a split-second decision.  He was faced with

12  the dilemma of acting decisively, under tremendous pressure and clearly without

13  the benefit of a second chance, when decedent continued to reach into his pocket

14  after he ordered decedent 3 times to stop and show his hands.  Thus, Officer

15  GARCIA shot decedent in self-defense and his actions were reasonable.

16  Plaintiffs have not shown a purpose to harm.  Judgment should be granted as to

17  Plaintiffs 14th Amendment claim.  Plaintiffs also concede that partial summary

18  judgment should be granted as to their <u>Monell</u> claims.

19  Dated:  July 18, 2013            MICHAEL R.W. HOUSTON, CITY
                                     ATTORNEY
20

21

22                          By: _____/s Moses W. Johnson, IV_____
                                    Moses W. Johnson, IV
23                                  Assistant City Attorney
                                    Attorneys for Defendant
24                                  CITY OF ANAHEIM, and CITY OF
                                    ANAHEIM erroneously sued as
25                                  ANAHEIM POLICE DEPARTMENT
                                    and DAVID GARCIA
26

27

28  96544v1

                                    10