1
2
3
4
5
6
7

**SAYRE & LEVITT, LLP**
Federico Castelan Sayre, Esq., (SBN: 067420)
sayreesq@sayrelevitt.com
Adam L. Salamoff, Esq., (SBN:193686)
asalamoff@sayrelevitt.com
333 Civic Center Drive West
Santa Ana, CA   92701
T: (714) 550-9117 / F: (714) 716-8445

Attorneys for Plaintiffs, BARBARA PADILLA and MARIO CEJA

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20

BARBARA PADILLA and MARIO
CEJA,

   Plaintiffs,

v.

CITY OF ANAHEIM, ANAHEIM
POLICE DEPARTMENT, AND DOE
OFFICERS OF THE ANAHEIM POLICE
DEPARTMENT, and DOES 1 through
100, Inclusive,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO. SACV12-622 JVS (JPRx)**

PLAINTIFFS' NOTICE OF MOTION
AND MOTION FOR NEW TRIAL
PURSUANT TO F.R.C.P. 59;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT
THEREOF; DECLARATION OF
FEDERICO  C. SAYRE, ESQ.; AND
[PROPOSED] ORDER

Date:  December 9, 2013
Time: 1:30 p.m.
Dept.: 10C

Judge James V. Selna

Trial: 09/24/13

21
22
23
24
25
26
27
28

## TO THE COURT, DEFENDANTS, AND DEFENDANTS' COUNSEL:

<u>PLEASE TAKE NOTICE</u> that Plaintiffs, by through their counsel of record, will hereby move for an Order granting a new trial in this matter, on December 9, 2013, at 1:30 p.m., in the above court.

1    The grounds for that motion are: 1) Respectfully, there was an error of law to
2    permit the defense to offer evidence of decedent's relationship to any gang; 2) There was
3    insufficient evidence for a defense verdict as it was completely against undisputed
4    scientific evidence; and 3) It was an error to permit jury instructions utilizing the
5    "moving force" language.

6    This motion is based upon this paperwork, oral argument of the parties, the
7    pleadings, trial testimony and records on file herein and any such other evidence the
8    Court deems proper.

9
10   DATED: November 4, 2013          **SAYRE & LEVITT, LLP**

11
12
13   By: _____
14          Federico C. Sayre
            Adam L. Salamoff
15          Attorneys for Plaintiffs
            BARBARA PADILLA AND MARIO CEJA
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1. INTRODUCTION

On November 4, 2011, Marcel Ceja was shot to death by defendant Officer David Garcia, who was acting within the course and scope of his duties as a police officer by the defendant City of Anaheim.   Plaintiffs contended that defendant Officer Garcia violated Marcel Ceja's federal civil rights by shooting and killing him while he was unarmed with his hands raised in the air.

Defendant Garcia contended that he shot Marcel Ceja because Marcel Ceja would not take his left hand out of his left pocket and Officer Garcia said he was afraid that he might have a gun in the pocket.

Plaintiffs Barbara Padilla and Mario Ceja, who are the parents of the decedent, Marcel Ceja, sought compensation for the excessive force by defendant Officer David Garcia which resulted in the death of their son Marcel Ceja.  Defendants Officer David Garcia and the City of Anaheim denied that the shooting was excessive force and denied that the shooting violated the civil rights of Marcel Ceja and contested the nature and the extent of the damages claimed.

The Jury Trial in this matter commenced, in this department, on September 24, 2013.  On September 27, 2013, the Jury returned a verdict in favor of the defendants.

### 2. LEGAL STANDARD

Rule 59 of the Federal Rules of Civil Procedure governs motions for a new trial. Although this Court may not order a new trial simply because where it sitting as the trier

3

of fact it would have come to a different decision to than did the jury, see *Wilhelm v. Associated Container Trans. Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981), a new trial is justified "'if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'" *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976)); see also *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174 (9th Cir. 2002) (holding new trial appropriate if it is "'quite clear' that the jury has reached a seriously erroneous result"). Under Federal Rule 59, this Court may grant a new trial even if the jury's verdict is supported by "substantial evidence," and thus judgment as a matter of law is not warranted. See *Roy*, 896 F.2d at 1176.

Further, a new trial may be ordered if the award provided by the jury is "clearly not supported by the evidence, or only based on speculation or guesswork.'" *Snyder v. Freight, Constr.*, 175 F.3d 680, 689 (9th Cir. 1999) (quoting *Los Angeles Mem'l Coliseum Comm'n v. NFL*, 791 F.2d 1356, 1360 (9th Cir. 1986)).

F.R.C.P. 59(a)(1)(A) provides, in pertinent part:

"(a) In General.

(1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court…"

4

Pursuant to <u>F.R.C.P. 59(b)</u>, "A motion for a new trial must be filed no later than 28 days after the entry of judgment." Judgment was entered on October 7, 2013. This motion was filed on November 4, 2013, the deadline for filing such a motion. As such, Plaintiffs' motion is timely.

Plaintiffs will show that a new trial which is free of the "evidence" the Court improperly allowed to be presented to this jury, and which appealed to the jury's passions rather than to its reason, is required.

## 3. ARGUMENT

A. <u>It was an error to permit the defense to offer evidence of decedent's relationship to any gang.</u>

Plaintiffs submit that it was unduly prejudicial to allow defendants, at the time of trial, to consistently make reference to the Decedent's alleged gang affiliations. The issue was preserved by the Plaintiffs' filing of Motion in Limine No. 2 seeking to exclude evidence of decedent's relationship with a gang, a copy of which is attached as **Exhibit "1"** to the Declaration of Federico C. Sayre, Esq.

The admissibility of this evidence was highly and unfairly prejudicial, affected the substantial rights of the Plaintiffs, and resulted in a miscarriage of justice as evidenced by the defense verdict that is contrary to the scientific evidence.

This was character evidence that was erroneously admitted and that should have been excluded pursuant to Fed. R. Evid. Rule 404 and was unfairly prejudicial under

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL

Fed. R. Evid. Rule 403 and corresponding state evidentiary laws found within Evidence Code section 352.

In fact, allowing the gang affiliation evidence amounted to jury bias against the Decedent and Plaintiffs, which is grounds for a new trial.

Officer Garcia's subjective belief that decedent was a gang member because of his clothes and the tattoo on neck was not relevant to the determination whether he violated Decedent's civil rights by using unreasonable and excessive deadly force.  Plaintiffs concede that it was not an error to allow Officer GARCIA to testify as to his subjective belief when he pulled over on the side of the road to speak to Decedent and the two other persons that were with Decedent at the time, but there was absolutely no reason to allow testimony or evidence attempting to confirm any gang relationship of the Decedent.

Whether the decedent had a relationship with a gang was not relevant to the disputed issue of whether Officer GARCIA's use of deadly force upon Decedent was reasonable in light of the totality of the circumstances.  To allow testimony of any gang relationship of the Decedent at the time of trial was unnecessary and unfairly prejudicial, including, but not limited to: allowing defendants to go through each and every tattoo on the decedent's body to focus the jury's attention on the decedent's alleged relationship with a gang, instead of the fact that at the time Decedent was shot by defendant Officer GARCIA, that Decedent was unarmed and the scientific and physical evidence confirm that Decedent's left hand was not in his pocket, as alleged by Officer GARCIA.

*Lee v. Anderson* (2010) 616 F.3d 803 was an 8th Circuit excessive force civil rights case brought by the representative of decedent Fong Lee against defendant police officer Anderson. The plaintiffs alleged that officer Anderson killed Lee while chasing him. Similar to the contentions of Officer Garcia in the matter at hand, in his defense to the charges, defendant Anderson alleged that Fong had been armed and that he believed after he apprehended Fong that the decedent would shoot him. At trial, the court admitted the following gang affiliation evidence:

"Evidence of Fong Lee's gang affiliation was used to rebut the plaintiff's assertion that Fong Lee fled from [defendant] Andersen because he was frightened by Andersen's aggressive approach.... [T]he defendants offered no evidence regarding the nature of OMB or the activities its members engaged in. The inferences that the defendants tacitly asked the jury to draw were that gangs are more likely to engage in illegal activities, that engaging in an illegal activity gives motive to flee from police officers, and that Fong Lee's gang affiliation made it more likely that he was engaged in an illegal activity that would cause him to flee. The logic supporting its relevance is attenuated, and evidence of Fong Lee's gang membership was, at best, marginally probative of his motive in fleeing from the officers." *Id.*, at 809-810.

"Similarly, the gang affiliation evidence had slight probative value on whether Fong Lee was carrying a gun as he fled the officers. But the assumption that all gang members carry guns is the same assumption that gives rise to the danger of unfair prejudice." *Id.*, at 810.

"Given its low probative value and the danger of unfair prejudice, the gang affiliation evidence should have been excluded. Any error in admitting it, however, was harmless. The testimony was limited to whether Fong Lee was a member of a gang. The jury knew only that the gang was called OMB, that Lor had not engaged in violent activities while associated with the gang, and that he left the group when he decided to 'get his life straight.' When viewed in light of the evidence presented over the course of the six-day trial, we conclude that the gang affiliation testimony and defense counsel's limited use thereof during closing argument did not affect Lee's substantial rights or have more than a slight influence on the verdict." *Id.*

In *Lee*, the evidence was hardly relevant to showing that the decedent feared the police and that this accounted for his attempt to escape the defendant officers. Here, the only relevance was character assassination of the Decedent.  Defendant Officer GARCIA subjectively believed that Decedent was a gang member because of his attire and the presence of tattoos.  It was conceded that Decedent was not committing a crime at the time Officer GARCIA approached him.

In *Lee*, the Court determined that the error in admitting evidence of gang affiliation was harmless in light of the other evidence presented, but the circuit concluded that its minimal probative value was overcome by its prejudicial potential.

In the matter at hand, evidence of gang affiliation was immaterial to the use of excessive deadly force by defendant Officer GARCIA.  All that the evidence of gang affiliation did was poison the jury against Decedent, which was not harmless error.

### B. There was insufficient evidence for a defense verdict.

The power to grant a motion for a new trial "is a power to examine a whole case on the law and the evidence, with a view to securing a result, not merely legally, but also manifestly against justice, - a power exercised in pursuance of a sound judicial discretion, without which the jury system would be a capricious and intolerable tyranny, which no people could long endure." *Aetna Casualty & Surety Co. v. Yeatts*, 122 F.2d 350 (4th Cir. 1941).

When considering the merits of a motion for a new trial based on the insufficiency of the evidence, the court should weigh the evidence and set aside the verdict only if the verdict is contrary to the manifest weight of the evidence. *Tedrowe v. Burlington Northern, Inc.*, 158 Ill.App.3d 438, 511 N.E.2d 798, 110 Ill.Dec. 621 (1st Dist. 1987). The test to be applied by the court is not whether the evidence could have supported a verdict for the movant but whether a contrary verdict is clearly required. Under Fed.R.Civ.P. 59, a trial judge may weigh the evidence and consider the credibility of witnesses in ruling on a motion for a new trial. *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888 (4th Cir. 1980).

In *Wyatt*, the trial court granted the defendant a new trial on the basis of inadequate evidence to support the jury's verdict and excessive damages. The Fourth Circuit affirmed the granting of a new trial, stating that "a trial judge has a duty to set aside a verdict and grant a new trial even though it is supported by substantial evidence, 'if he is of the opinion that the verdict is against the clear weight of the evidence, or is

based upon evidence which is false or will result in a miscarriage of justice.' " 623 F.2d at 891 – 892, quoting *Williams v. Nichols*, 266 F.2d 389, 392 (4th Cir. 1959).

Here is the relevant testimony supporting Plaintiffs' request for a new trial:

1) The decedent was shot by Officer Garcia. (This fact was not disputed).

2) At the time of being shot, the decedent had his hands up as established by testimonial evidence of three independent witnesses and the doctor. (This testimonial evidence was disputed by Officer Garcia who contends that the decedent had his left hand in the left pocket of his sweatshirt).

3) The scientific evidence, namely the bullet wounds to the decedent and bullet trajectories based upon those wounds, established that a bullet pierced decedent's left wrist exiting near his left thumb before entering the decedent's right chest, which resulted in fatality in conjunction with the other bullet entering the upper left torso. (These scientific facts were not disputed).

4) The scientific evidence, namely the bullet holes in the sweatshirt, established that there were four (4) bullet holes in the sweatshirt's upper torso area, one (1) bullet hole in the left sleeve of the sweatshirt that was consistent with the decedent's wound to his left wrist, and there were no bullet holes in the region of the left or right pockets of the sweatshirt. Marc Firestone, testified that it was not possible for Decedent's left hand to have been in his left pocket at the time of the shooting based upon the location of

10

the entrance/exit wounds in Decedent's left hand and chest, especially in

light of the undisputed fact that there were no holes in or near the vicinity of

Decedent's left hoodie pocket.  See Report of Marc Firestone, attached as

**Exhibit "2"**.  He opined and concluded that Decedent's left hand had to

have been out of his left pocket and positioned somewhere in front of his

chest. (These scientific facts were not disputed).

5)   The scientific evidence, namely the bullet wounds to the decedent, bullet

trajectories based upon those wounds, and the locations of the bullet holes

in the sweatshirt, established that decedent's left hand was near his right

chest and not in his left pocket.  Dr. Lawrence Nguyen, the Coroner for the

County of Orange, who performed the autopsy upon Decedent reached a

similar conclusion, and testified at trial, that the Decedent's left hand had to

be out of his left pocket and somewhere in front of his chest at the time

Officer GARCIA fired his two rounds.  Dr. Nguyen's Report is attached as

**Exhibit "3"**. (These scientific facts were not disputed).  Additionally, the

Supplemental Report of Orange County Investigator Andrew Ross includes

his interview of Dr. Nguyen wherein he attributes Dr. Nguyen as opining

that, "Ceja's hand may have been positioned in front of his body during the

shooting incident and was struck by one of the bullets that penetrated Ceja's

chest/abdomen."  Investigator Ross' Supplemental Report is attached as

**Exhibit "4"**.

6)    The scientific evidence, namely the bullet wound to the decedent' left wrist/right chest and the locations of the bullet holes in the sweatshirt, established that decedent's left hand was not in his left pocket before or after the shooting because the bullet could not have pierced the decedent's left wrist and enter his right chest without leaving a hole in the left pocket of the sweatshirt if his left hand in fact had been in his left sweatshirt pocket. (These scientific facts were not disputed).

7)    Officer Garcia's shooting of the decedent would have been a civil rights violation under color of state law if decedent had his hands up near his chest as testified by the three independent percipient witnesses and the doctor. (This fact was not disputed and was the testimony of defense expert Callanan).

8)    Consequently, there was insufficient evidence for a verdict in favor of the defense because the scientific evidence, namely the wounds to the decedent, the bullet trajectories based upon decedent's wounds, and the absence of bullet holes in the left or right pocket regions of the decedent's sweatshirt, conclusively established that, irrespective of Officer Garcia's testimonial evidence, the decedent could not have had his hand inside the left pocket of his sweatshirt at the time that Officer Garcia shot and killed him

What the Jury did not see, or hear, at trial is any expert, scientific of physical evidence contradicting to what Mr. Firestone or Dr. Nguyen testified. The testimony

provided by Mr. Firestone and Dr. Nguyen was undisputed by the defendants, yet the Jury completely disregarded the testimony and evidence presented by both.

The only evidence presented by the defendants was Officer GARCIA'S testimony that Decedent's left hand was in his left pocket at the time he fired his two shots and remained in his pocket immediately after the shooting.  When asked at deposition and at trial, Officer GARCIA was unable to explain how it could be possible for Decedent's left hand to be in his left pocket at the time of the shooting and be shot through the left hand, but for there to be no bullet holes in or near the vicinity of Decedent's left hoodie pocket.

While no doubt more prejudicial than probative, Plaintiffs submit that the admission of such evidence amount to harmful error.  F.R.C.P. 61 defines, "Harmless error" as follows:

"Unless justice requires otherwise, no error in admitting or excluding evidence--or any other error by the court or a party--is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

Plaintiffs contend that in this matter, justice requires otherwise.  It was clear that the Jury had already decided that Officer GARCIA was in the right because of the allowed evidence that Decedent was a gang member, which bore no relevance to the disputed issues in the case.

13

Improper introduction of evidence that plaintiff had been juvenile offender and had been convicted of felony as adult is prejudicial to plaintiff's civil suit alleging police brutality where there was little evidence and result of case turned almost entirely on relative credibility of party-witnesses. *Powell v Levit* (1981, CA9 Cal) 640 F2d 239, 7 Fed Rules Evid Serv 1303, cert den (1981) 454 US 845, 70 L Ed 2d 131, 102 S Ct 160.

In addition to evidence of past criminal history of Decedent being admitted at the trial in this matter, evidence of gang affiliation can be analogous to that of criminal behavior in the minds of a Jury, with just as much impact and bias.  In comparison to the *Powell* case above, in the case before this court, evidence of Decedent's gang affiliation had nothing to do with why Decedent was shot by defendant Officer GARCIA. Although Officer GARCIA subjected believed that Decedent might have been a gang member, no information regarding Decedent's alleged gang affiliation became known to Officer GARCIA until after the occurrence of the incident.

As such, for the Jury to find for defendant Officer GARCIA and against Plaintiffs was clearly against the weight of the evidence, thus authorizing the Court to order a new trial.

C.  It was an error to permit jury instructions utilizing the "moving force" language related to the issue of causation.

The "moving force" language derives from United States Supreme Court case law interpreting section 1983 liability based upon a *Monell* claim. *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).  Prior to the commencement of Trial in this matter,

14

Plaintiffs' *Monell* claim was dismissed with prejudice.  At the time that the parties conferred with the Judge regarding jury instructions, Plaintiffs' counsel objected to the use of the "moving force" language found within the jury instructions.

Plaintiffs contend that the "moving force" language is unintelligible, uncertain, vague and ambiguous, and fails to apprise the trier of fact, with respect to non-*Monell* based claims, as in the case sub judice, of the legal standard applicable to issues of causation.

For this reason, Plaintiffs submit that it was not a harmless error to allow such language to go before the Jury as one of their jury instructions.

D. The Court may order a New Trial for any Justifiable Reason

In addition to the foregoing, in accordance with Rule 59(d) of the Federal Rules of Civil Procedure, any justifiable reason that the Court may find as a basis for granting Plaintiffs' Motion for New Trial and as an alternate basis, is requested by the Plaintiffs.

4. **CONCLUSION**

For the foregoing reasons, Plaintiffs contend that there is sufficient justification for the Court to order a new trial on this matter.

DATED: November 4, 2013          **SAYRE & LEVITT, LLP**

By: _Federico C. Sayre_

Federico C. Sayre
Adam L. Salamoff
Attorneys for Plaintiffs
BARBARA PADILLA AND MARIO CEJA

## DECLARATION OF FEDERICO C. SAYRE, ESQ.

I, Federico C. Sayre, Esq., declare:

1. I am an attorney at law, duly licensed to practice before all the courts in the state of California, and am a partner with the law offices of Sayre & Levitt, LLP, attorneys for plaintiffs BARBARA PADILLA and MARIO CEJA.  The information stated in this declaration is based upon my own personal knowledge and if called as a witness, I could and would testify to the foregoing facts.

2. Attached as **Exhibit "1"** is a true and correct copy of Plaintiffs' Motion in Limine No. 2, To Preclude Evidence Of, Or Reference To, Any Gang Affiliations Of Decedent, Marcel Ceja, which was denied by the Court.

3. Attached as **Exhibit "2"** is a true and correct copy of the Rule 26 Expert Report of Plaintiffs' expert, Marc Firestone.

4. Attached as **Exhibit "3"** is a true and correct copy of the Autopsy Report of Orange County Coroner, Dr. Lawrence Nguyen and the Supplemental Report of Investigator Ross.

5. Attached as **Exhibit "4"** is a true and correct copy of the Supplemental Report of Investigator Ross

I declare, under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

16

Executed this 4th day of November, 2013, at Santa Ana, California.

By: _____
Federico C. Sayre, Declarant

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR NEW TRIAL

1  **SAYRE & LEVITT, LLP**
   Federico Castelan Sayre, Esq., (SBN 067420)
2  sayreesq@sayrelevitt.com
3  Adam L. Salamoff, Esq., (SBN:193686)
   asalamoff@sayrelevitt.com
4  333 Civic Center Drive West
5  Santa Ana, CA  92701
   T: (714) 550-9117 / F: (714) 716-8445
6
7  Attorneys for Plaintiffs, BARBARA PADILLA and MARIO CEJA

8                  **UNITED STATES DISTRICT COURT**
9                 **CENTRAL DISTRICT OF CALIFORNIA**
10

11 BARBARA PADILLA and MARIO        )  **CASE NO. SACV12-622 JVS (JPRx)**
   CEJA,                            )
12                                  )  NOTICE OF MOTION AND MOTION
13              Plaintiffs,         )  IN LIMINE NO. 2 TO PRECLUDE
                                    )  EVIDENCE OF, OR REFERENCE TO,
14 v.                               )  ANY GANG AFFILIATIONS OF
                                    )  DECEDENT, MARCEL CEJA
15 CITY OF ANAHEIM, ANAHEIM         )
16 POLICE DEPARTMENT, AND DOE       )
   OFFICERS OF THE ANAHEIM POLICE   )  Judge James V. Selna
17 DEPARTMENT, and DOES 1 through   )
18 100, Inclusive,                  )  Discovery Magistrate:
                                    )  Judge Jean P. Rosenbluth
19                                  )
              Defendants.           )  Trial: 09/24/13
20 _____)

21     **TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS**
22 **OF RECORD HEREIN:**
23     **PLEASE TAKE NOTICE** that Plaintiffs, BARBARA PADILLA and MARIO
24 CEJA, through their counsel of record, SAYRE & LEVITT, LLP, hereby respectfully make the
25 instant motion ("Motion") for an order instructing Defendants and their counsel not to refer to,
26 interrogate concerning, comment on, or attempt to suggest to the jury in any way, and further to
27 advise their witnesses not to refer to, comment on, or attempt to suggest in any way, any
28

                                     1

**EXHIBIT**
tabbies
1

1   reference to whether Marcel Ceja ("DECEDENT") had any gang affiliations.

2        Said Motion in Limine is brought on the grounds that it is anticipated that Defendants

3   may make reference to the fact that prior to his death, DECEDENT was allegedly a member of

4   a gang and/or had gang affiliations.  Plaintiffs contend that such a reference to that information

5   is not relevant under Federal Rule of Evidence§403, California Evidence Code §§350 and 352

6   in that any alleged gang affiliations of the DECEDENT are irrelevant with regard to whether or

7   not Defendant used reasonable force when he shot DECEDENT, who was unarmed at the time

8   of the incident.  All evidence of any alleged gang affiliations of the DECEDENT will do is

9   poison the jury and attempt to show that DECEDENT was somehow responsible for the

10  excessive force used upon him at the time of the incident.  There has been no evidence that

11  DECEDENT was acting in the commission of any crime at the time Defendant OFFICER

12  GARCIA approached him on the date of the incident.  Thus, any alleged gang affiliations of the

13  DECEDENT bear no real relevance to the facts of this matter, and as such, any comments upon

14  such issues would be far more prejudicial than probative.

15       Plaintiffs respectfully request that this court grant this instant Motion in Limine to

16  exclude any such references and/or instruct Defendants not to make any such references as

17  herein alleged since such references are not relevant and in all likelihood would be more

18  prejudicial than probative pursuant to Federal Rule of Evidence §403 and California Evidence

19  Code §§350 and 352.

20       This Motion in Limine is based upon this notice of motion, the attached supporting

21  points and authorities, any and all points and authorities in reply to Defendants' Opposition

22  should one be filed, as well as any evidence and arguments submitted at the hearing of this

23  instant Motion In Limine.

24  Dated:  August 12, 2013        **SAYRE & LEVITT, LLP**

25

26                 By: _____

27                        Federico C. Sayre
                          Adam L. Salamoff
                          Attorneys for Plaintiff

28

2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case arises out of a police shooting incident that occurred on or about November 4, 2011. Plaintiffs, BARBARA PADILLA and MARIO CEJA, are the parents of Decedent, MARCEL CEJA (hereinafter "DECEDENT").

On or about November 4, 2011, in front of Casa Madrid Apartment Homes, located in the 2300 block of East Ball Road, in Anaheim, California, at approximately 11:54 a.m., Defendant Officer DAVID GARCIA, acting within the course and scope of his duties as a police officer, employed by the Defendant CITY OF ANAHEIM's (hereinafter "CITY") Police Department, intentionally and/or negligently fatally shot DECEDENT multiple times, while DECEDENT was unarmed with his hands raised in the air.

The actions of Defendants, and each of them, were in violation of DECEDENT's Fourth and Fourteenth Amendments of the United States Constitution, and the actions undertaken by Defendants constituted an unjustified seizure of his person, deprivation of his liberty interest, excessive force and were in violation of MARCEL CEJA's civil rights under color of law under 42 U.S.C. §1983 and other sections of the United States Code as more fully set forth herein, as well as his civil rights afforded pursuant to California Civil Code §§51, 51.7, 52 and 52.1.

### II. STATEMENT OF FACTS PERTINENT TO THIS INSTANT MOTION

It is anticipated that Defendants, their witnesses or their counsel may make reference that DECEDENT had gang affiliations, or was allegedly a member of a gang, in an attempt to show that Defendant OFFICER GARCIA's actions of shooting DECEDENT, who was unarmed at the time of the shooting and complying with the Defendant's orders, were somehow justified and/or reasonable.

///

1       Plaintiffs seek to exclude evidence of any alleged gang affiliations of the DECEDENT
2   and/or DECEDENT's membership in a gang because they bear no relevance with regard to the
3   occurrence of the events on the date of the subject incident, involving DECEDENT.

4       Accordingly, this Honorable Court should grant this instant Motion in Limine to
5   preclude any such references since such references to alleged gang affiliations of the
6   DECEDENT and/or DECEDENT's alleged membership in a gang, which are not relevant to
7   any issue in this matter and most likely would be more prejudicial than probative and would
8   also waste the Court's time during trial in this matter.

9

10  **III.    THIS COURT HAS THE AUTHORITY TO ISSUE ORDERS IN LIMINE.**

11      A motion in limine is a motion to exclude evidence deemed inadmissible and prejudicial
12  by the moving party. *People v. Morris* (1991) 53 Cal.3d 152, 188.   The purpose of such a
13  motion is to "avoid the obviously futile attempt to "unring the bell" when highly prejudicial
14  evidence is offered and then stricken at trial. *Id*.   In fact, motions in limine are well recognized
15  in practice and by case law.   See *People v. Morris*, supra, 53 Cal.3d at 188.   Moreover,
16  authority for such motions can be inferred from the formatting and procedural requirements for
17  motions in limine prescribed by the California Rules of Court.   See California Rules of Court,
18  Rule 312(b).   The court also had the authority to make such orders in limine pursuant to its
19  inherent power to "provide for the orderly conduct of proceedings before it" and to "control its
20  processes and orders so as to make them conform to law and justice."   California Code of Civil
21  Procedure §§128(a)(3), (8).

22

23  **IV.    THE COURT HAS THE AUTHORITY TO EXCLUDE NON-RELEVANT**
24  **        PREJUDICIAL EVIDENCE**

25      This Honorable Court has discretion under Federal Rule of Evidence §403 and
26  California Evidence Code §352 to exclude evidence of gang affiliation, if its probative value is
27  substantially outweighed by its prejudicial effect. *People v. Castro* (1985) 38 Cal.3d 301, 312–

28

313, 211 Cal.Rptr. 719, 725.

"Evidence of gang membership is considered **prejudicial** because it tends to establish criminal disposition". *People v. Pinholster* (1992) 1 Cal.4th 865, 945, 4 Cal.Rptr.2d 765, 824 P.2d 571.

Additionally, "California courts have long recognized the potentially **prejudicial** effect of gang membership evidence". *People v. Maestas* 20 Cal.App.4th 1482, 1497, 25 Cal.Rptr.2d 644.

Here, Defendant OFFICER GARCIA essentially profiled DECEDENT, testifying that he "looked like" a gang member and/or was in an area with a lot of "gang activity." There is no evidence that DECEDENT was acting in the commission of any crime when he was approached by Defendant OFFICER GARCIA.

Any introduction of evidence of DECEDENT's alleged gang affiliations and/or membership in a gang would unduly prejudice the jury and distract from the main issues of this trial.

The presentation of evidence concerning DECEDENT's alleged gang affiliations and/or membership in a gang, would clearly create a substantial danger of undue prejudice to the Plaintiffs. More specifically, if references about DECEDENT's alleged gang affiliations are permitted to be heard before the jury, there will arise a grave danger that the jury may conclude that, since DECEDENT had gang affiliations, then he is a criminal and therefore even though he was not acting in the commission of any crime at the time of the subject incident, he is guilty by reputation and that Defendant OFFICER GARCIA's actions were reasonable.

Accordingly, Plaintiffs respectfully submit that permitting any evdience of, or reference to, any gang affiliations of the DECEDENT is irrelevant in this matter would clearly create a substantial danger of undue prejudice to Plaintiffs in that it would confuse the issues being presented to be tried and mislead the jury in that regard.

///

1   V. __CONCLUSION__

2         Based upon all of the foregoing, Plaintiffs hereby respectfully request that this

3   Honorable Court *grant* this instant Motion in Limine to preclude any reference to any alleged

4   gang affiliations of the DECEDENT, including any alleged membership of the DECEDENT in

5   a gang.

6

7   DATED: August 12, 2013                    **SAYRE & LEVITT, LLP**

8

9

10                                  By: _____
                                        Federico C. Sayre
11                                      Adam L. Salamoff
                                        Attorneys for Plaintiffs
12                                      BARBARA PADILLA AND MARIO CEJA

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPORT OF MARC A. FIRESTONE, PH.D.**
**IN THE MATTER OF**
**PADILLA V. CITY OF ANAHEIM**

## 1. Qualifications

### 1.1. Education
    **1.1.1.** I am a trained physicist with a B.S., M.S., and Ph.D. degrees in physics from the University of Michigan.
    **1.1.2.** I completed over 1000 hours of in-house training in forensic engineering at von Haenel & Associates, Inc.

### 1.2. Work Experience

    **1.2.1.** I spent over 20 years as a research physicist/engineer doing contract work for agencies of the federal government including NASA, and the Departments of Defense and Energy. During this time period I worked for two universities and several private contract research companies. My professional responsibilities were in the general areas of satellite dynamics and control, controlled thermonuclear fusion reactors, and nuclear weapons phenomenology and effects. I have published over 30 scientific papers and reports in these areas and given numerous presentations at scientific conferences and workshops.
    **1.2.2.** Since 1995 I have been employed full time as a forensic engineer. My cases cover a wide spectrum of technical issues that utilize my training and experience in the physical sciences and mathematics. These include slip/trip and fall, vehicular accidents, product defects, fire and explosion analysis, radiation effects, and bullet trajectory and blood spatter analysis. My clients include insurance companies, civil defense and plaintiff attorneys, and criminal defense attorneys and prosecutors. I have worked for city, county, and state government agencies. I have presented a lecture series on vehicular accident reconstruction for M.C.L.E. credit and given lectures to attorney groups.

## 2. Summary of the Case

On 4 November 2011, at approximately 1154, Officer David Garcia of the Anaheim Police Department encountered Marcel Ceja and two other males in the vicinity of Ball Road and Belhaven Street in Anaheim, CA. After walking up to them and asking them to talk to him, Mr. Ceja approached him and the other two males continued walking away. Then Mr. Ceja turned and ran away. Officer Garcia chased Mr. Ceja. During the chase Mr. Ceja tripped and a handgun flew from his right hand just before or during the fall. Mr. Ceja then turned towards Officer Garcia while sitting up. According to Officer Garcia, Mr. Ceja put his left hand into his sweatshirt pocket and appeared to be manipulating something inside the pocket. Officer Garcia, fearing that Mr. Ceja had a second gun in his left sweatshirt pocket, ordered him to show his hands. When Mr. Ceja did not Officer Garcia fired two shots at Mr. Ceja and killed him.


EXHIBIT
2

3. **Areas of Investigation**

I have been retained by the attorneys for the plaintiffs to analyze the shooting incident that resulted in the death of Marcel Ceja. To this end I have inspected the shooting scene and Mr. Ceja's clothing at the time of the incident. I reviewed various documents generated in this incident. I also made measurements, took photographs, and performed calculations.

4. **Opinions**

4.1. Mr. Ceja was facing approximately 18 degrees clockwise (to Officer Garcia's left) from Officer Garcia's perspective when he was shot. This result is calculated from gunshot wound B's entrance and exit positions and Ceja's approximate torso depth.

    4.1.1.   This entails a rotation away from a direct line of sight to Officer Garcia and is thus not a favorable orientation for Mr. Ceja to shoot from.

    4.1.2.   This position is consistent with a movement of Mr. Ceja's left hand up across his chest in a protective maneuver.

4.2. Officer Garcia was in the range of 12 feet away from Mr. Ceja when the shots were fired. This is based on the downward angle of gunshot wound B of approximately 25.4 degrees, the downward (north to south) slope of approximately 20 degrees where Mr. Ceja was shot, his location of approximately 5 feet north of the north edge of the sidewalk as indicated by the position of the black bandana, Ceja's approximate torso depth, and an assumed gun height of 4 feet above ground.

    4.2.1.   This estimate would place Officer Garcia's gun when he fired at the south edge of the sidewalk or just south of the south edge facing primarily north. It is also consistent with the gun at the north edge of the sidewalk and Officer Garcia facing primarily west. However, the position of the bullet casings would favor the gun in the area of the south edge of the sidewalk.

    4.2.2.   In his deposition Officer Garcia estimated he was 5 to 15 feet away from Mr. Ceja when he shot. In his interview with the Orange County District Attorney's Office he estimated 5 to 10 feet away when he shot.

    4.2.3.   Witness Clements indicated that he saw Officer Garcia with his gun pointed about 10 feet from Mr. Ceja.

    4.2.4.   Witness Diane Jackson saw Officer Garcia standing on the sidewalk with his gun drawn and pointed in a western direction from her balcony. She could not see Mr. Ceja because her sightline to him would have been blocked by her balcony.

4.3. The location of Mr. Ceja's gun was approximately 8 feet north of the black bandana. If the black bandana is the approximate position of Mr. Ceja on the ground then his gun had to be purposely thrown away prior to or during his fall.

    4.3.1.   At my site inspection on 10 May 2013, the ivy in the planter was approximately 4.5 inches high. At this height the gun could not have slid out of Mr. Ceja's hand as he was falling and traveled 8 feet.

    4.3.2.   The scene photos taken by the Orange County Crime Lab show a very similar density and height of the ivy ground cover that I observed at my site inspection.

    4.3.3.   In his interview with the Orange County District Attorney's Office Officer Garcia drew a distinction between someone throwing a gun away and someone who just

loses it in a fall. The one throwing the gun away is in the process of giving up whereas this is not the case if the gun is unintentionally dropped.

**4.4.** Officer Garcia, in his interview with the Orange County District Attorney's Office and in his deposition, was adamant that he fired two rounds while Mr. Ceja's left hand was in his sweatshirt's left pocket.

    4.4.1.  In his interview, the primary reason Officer Garcia gives for shooting Mr. Ceja is that Ceja's left hand was in his sweatshirt's left pocket. Officer Garcia said he saw the left hand go into the pocket and Mr. Ceja then started to manipulate something in the pocket. Fearing it was a gun, Officer Garcia fired his weapon. After shooting Mr. Ceja, Officer Garcia then retreated to take cover because Mr. Ceja still would not take his hand out of his pocket. In his deposition Officer Garcia reiterated that he had a clear view of the sweatshirt.

    4.4.2.  In the Autopsy report gunshot wound C is through the left hand. The entrance is on the posterior lateral wrist and the exit is at the base of the thumb. The report postulates that the bullet went through the left hand and then continued into either the upper right chest, gunshot wound A, or the left upper abdomen, gunshot wound B. This requires the left hand be positioned in front of the chest with the fingers partially pointing downward and the back of the hand facing the oncoming bullet.

    4.4.3.  Officer Garcia's scenario of the shooting incident requires that there be a bullet hole in the left pocket of Mr. Ceja's sweatshirt. However, upon inspection there is no bullet hole, or defect of any kind in this pocket. Likewise, there was no hole or defect in the right pocket.

**4.5.** The physical evidence leads to the conclusion that Officer Garcia purposely shot Mr. Ceja twice while his empty left hand was in front of his chest. The empty hand would have been perfectly visible to Officer Garcia. His statements and testimony are so at variance with the physical evidence that one has to conclude Officer Garcia purposely lied about the facts of this shooting incident.

## 5.  Materials Reviewed.

    5.1. Officer Involved Shooting Report dated 6 December 2012, Office of the District Attorney, Orange County, CA.

    5.2. Orange County District Attorney's Office Bureau of Investigation Interview Report dated 16 December 2011.

    5.3. Anaheim Police Department General Occurrence Hardcopy, GO#2011-167108 Open, AOD-15 AOD-OC DA.

    5.4. Orange County Sheriff-Coroner Autopsy Report and photos of Case Number 11-04061-BA.

    5.5. Orange County Crime Lab photos.

    5.6. Deposition of David Garcia, 4 June 2013.

    5.7. Orange County evidence reports and scene sketches.

    5.8. Interview of witness Alejandro Ramirez, Law Office of Sayre & Levitt, 1 December 2011.

5.9. Physical evidence maintained by the Anaheim Police Department.

6. **Contemplated Additional Work**
   Additional work will include reviewing any discovery materials that have not been available at this time.

7. **Compensation**
   I have been engaged by plaintiff's attorney, Federico Sayre, as a member of the Consultants Bureau of Kashar Technical Services, Inc. The rate the Consultants Bureau charges for my services is $400.00 per hour for all aspects of the case including travel, inspection, review of materials, analysis, deposition and trail testimony.

8. **Exhibits**
   8.1. Deposition Testimony of Marc A. Firestone during the last four years.
   8.2. Trial Testimony of Marc A. Firestone during the last four years.
   8.3. Curriculum Vitae of Marc A. Firestone.

Marc A. Firestone, Ph.D.                    2 July 2013

# ORANGE COUNTY SHERIFF-CORONER
## 1071 W. Santa Ana Blvd.
### Santa Ana, CA 92703
#### Coroner Division

| DECEDENT: | CEJA, Marcel Luis | CASE NUMBER: 11-04061-BA |
|---|---|---|
| AGE: 22 Years | DOB: 6/30/1989   SEX: Male | RACE: Hispanic |

PLACE OF DEATH:    UCI Medical Center

DATE/TIME OF DEATH:    11/04/2011 14:16

AUTOPSY DATE/TIME:    11/07/2011 9:18

PLACE OF AUTOPSY:    **Orange County Coroner Facility**
    **1071 W. Santa Ana Blvd.**
    **Santa Ana, CA 92703**

AUTOPSY ATTENDANTS:    **Richard Gustilo, OCSD**
    **Ryan McNamara, OCSD**
    **Jennifer Jarrett, OCSD**
    **John V. Savino, OCCO**
    **Tom Conklin, OCDA**
    **Andrew Ross, OCDA**
    **Jeff Mundy, APD**

CAUSE OF DEATH:    **Multiple gunshot wounds**

OTHER CONDITIONS:    None

MANNER:    Homicide

CERTIFICATE ISSUED:    11/7/2011

AMENDMENT:

Lawrence L. Nguyen, M.D.
Forensic Pathologist



EXHIBIT

3

## ORANGE COUNTY SHERIFF-CORONER
## AUTOPSY REPORT

CEJA, Marcel Luis

11-04061-BA
Page 2

EXTERNAL EXAMINATION: The body is identified by toe tags and is that of an unembalmed adult Hispanic male who appears about the reported age of 22 years. The body weighs 148 pounds, measures 66 inches, and appears well-developed and well-nourished. Numerous tattoos are present throughout the body. A possible scar is present on the upper abdomen, that is ovoid in shape and measures ¾ x ½ inches. A small area of ecchymosis is present in the right antecubital fossa. Rigor mortis has presumably been altered. Livor mortis is present posteriorly.

The head is normocephalic and covered by black hair. A sparse mustache/goatee is present. Examination of the eyes reveals irides that are brown in color and sclerae that are unremarkable. There are no petechial hemorrhages of the conjunctivae of the lids or the sclerae. Upper and lower teeth are present. The neck is unremarkable.

There is no chest deformity. The abdomen is flat. The genitalia are those of an adult male. The penis appears uncircumcised. The external genitalia are without trauma or lesions. The extremities show no edema, joint deformity, abnormal mobility, or needle tracks.

EVIDENCE OF THERAPEUTIC INTERVENTION: The following are present and are in proper position: endotracheal tube, orogastric tube, EKG pads, urinary catheter, intravenous lines.

There are signs that the following surgical procedures have been done: left-sided thoracotomy, right-sided chest tube placement, laparotomy.

GUNSHOT WOUNDS: The following gunshot wounds have been labeled "A", "B", and "C" arbitrarily. This does not imply an opinion as to the number of shots or to the order in which these wounds were sustained.

11/8/2011  bl (10574)

Lawrence L. Nguyen, M.D., Forensic Pathologist

## ORANGE COUNTY SHERIFF-CORONER
## AUTOPSY REPORT

CEJA, Marcel Luis

11-04061-BA
Page 3

Gunshot wound "A":
The entrance wound is ovoid and measures ¾ x⅝ inches, with a 1/16 inch circumferential marginal abrasion. The entrance wound is situated at the right upper chest. It is centered 17 inches from the vertex and 1 inch to the right of midline. There is no soot or stippling.

There is no exit wound.

The projectile was recovered from within the right chest cavity, not adherent or embedded in any structures, and submitted for evidence. The projectile consists of a medium caliber, copper jacketed lead bullet. In addition, fragments of copper jacket and lead from the projectile were recovered just external to the anterior 5th intercostal space.

The direction of the wound is front-to-back, slightly downward, and slightly left to right.

The wound path penetrates the right upper chest, through the 5th intercostal space, perforates the right middle and right lower lung lobes, grazes the right hemidiaphragm, and terminates within the right chest cavity.

Gunshot wound "B":
The entrance wound is ovoid and measures ½ x⅝ inches, with a 1/16 inch circumferential marginal abrasion. The entrance wound is situated at the left upper abdomen. It is centered 20 ¼ inches from the vertex and 1 inch to the left of midline. There is no soot or stippling.

The exit wound is C-shaped and measures ¾ x ¼ inches with opposable edges. The wound exit is situated at the right lower back. It is centered 25 inches from the vertex and 2 ¼ inches to the right of midline. There is no soot or stippling.

No projectile was recovered at autopsy.

_Lawrence L. Nguyen_

Lawrence L. Nguyen, M.D., Forensic Pathologist

11/8/2011 bl (10574)

**ORANGE COUNTY SHERIFF-CORONER**
**AUTOPSY REPORT**

CEJA, Marcel Luis

11-04061-BA
Page 4

The direction of the wound is front-to-back, downward, and left-to-right.

The wound path penetrates through the left upper abdomen, antrum of the stomach, head of the pancreas, left lobe of the liver, inferior vena cava, and exits the right lower back.

Gunshot wound "C":
The entrance wound is round and measures ⅜ x ⅜ inches. The entrance wound is situated at the left posterolateral wrist. There is no soot or stippling.

The exit wound is irregularly-shaped and measures ⅞ x ½ inches. The wound exit is situated at the base of the left thumb. There is no soot or stippling.

A small fragment of copper jacket and a small fragment of lead core were recovered from the wound tract and submitted for evidence. It is possible for wound "C" to be associated with wounds "A" or "B".

The wound path penetrates through the soft tissues and bone of the left wrist and base of thumb.

MINOR INJURIES:
- There are small focal red abrasions on the right knee.
- There is an ovoid ring-shaped abrasion (⅞ x ⅝ inches) with central sparing of intact skin (¼ x ¼ inches) located on the left shoulder.

INITIAL INCISION: The body cavities are entered through the standard Y-shaped incision and the standard coronal incision. No foreign material is present in the mouth, upper airway or trachea.

NECK: The neck organs are removed en bloc with the tongue. No lesions are present nor is trauma of the gingiva, lips, or oral mucosa demonstrated. There is no edema of the larynx. Both hyoid bone and larynx are intact and without fractures. No hemorrhage is present in the adjacent throat organs, investing

11/8/2011 bl (10574)

Lawrence L. Nguyen, M.D., Forensic Pathologist

# ORANGE COUNTY SHERIFF-CORONER
## AUTOPSY REPORT

CEJA, Marcel Luis

**11-04061-BA**
**Page 5**

fascia, strap muscles, thyroid, or visceral fascia. There are no prevertebral fascial hemorrhages. The tongue, when sectioned, shows no trauma.

CHEST/ABDOMINAL CAVITY: The right pleural cavity contains 200 cc of bloody fluid. The left pleural cavity contains 300 cc of bloody fluid. The lungs are poorly expanded. The subcutaneous fat of the abdominal wall measures 2.5 cm. The organs of the abdominal cavity have a normal arrangement and none are absent. There is a moderate amount of bloody fluid in the abdominal cavity. The peritoneal cavity is without evidence of peritonitis.

## SYSTEMIC AND ORGAN REVIEW

CARDIOVASCULAR SYSTEM: The aorta is elastic and of even caliber throughout with vessels distributed normally from it. The thoracic and abdominal aorta are without atherosclerosis. There is no tortuosity or widening of the thoracic segment. There is no dilation of the lower abdominal segment. No aneurysm is present. The pericardial sac has been previously opened. The epicardium shows scattered and confluent petechial hemorrhages.

The heart weighs 350 grams and has a normal configuration. The right ventricle is 0.5 cm thick. The left ventricle is 1.5 cm thick. The interventricular septum is 1.5 cm thick. The chambers are normally developed and are without mural thrombosis. The valves are thin, leafy, and competent.

There is no endocardial discoloration. There are no gross lesions of the myocardium. There is no abnormality of the apices of the papillary musculature. There are no defects of the septum. The great vessels enter and leave in a normal fashion. The coronary ostia are patent. There is a normal pattern of coronary artery distribution. There is no coronary atherosclerosis of the major coronary arteries. The blood within the heart and large blood vessels is liquid.

RESPIRATORY SYSTEM: Moderate secretions are found in the upper respiratory passages. The mucosa is intact and pale. The lungs are crepitant.

11/8/2011  bl (10574)

Lawrence L. Nguyen, M.D., Forensic Pathologist

## ORANGE COUNTY SHERIFF-CORONER
## AUTOPSY REPORT

CEJA, Marcel Luis

11-04061-BA
Page 6

The left lung weighs 300 grams and the right, 370 grams. The visceral pleurae are smooth and intact. The parenchyma is unremarkable. The pulmonary vasculature is without thromboembolism.

GASTROINTESTINAL SYSTEM: The esophagus is intact throughout. The stomach is distended. It contains 210 grams of dark red clotted and coagulated blood. The mucosa is unremarkable. Portions of tablets and capsules cannot be discerned in the stomach. The small intestine and colon are examined by inspection, palpation, and multiple incisions, and are unremarkable. The appendix is present. The head of the pancreas shows trauma, as previously described. The remainder of the pancreas is lobular and firm. There is no early autolysis or necrosis.

HEPATOBILIARY SYSTEM: The liver weighs 1400 grams, is of average size, and is tan-brown. The consistency of the parenchyma is soft. The cut surface is smooth. There is a normal lobular arrangement. The left lobe of the liver shows extensive disruption. The gallbladder is present.

URINARY SYSTEM: The left kidney weighs 140 grams and the right, 140 grams. The kidneys are normally situated and the capsules strip easily, revealing a surface that is pale. The corticomedullary demarcation is preserved. The urinary bladder is unremarkable. It contains no urine.

GENITAL SYSTEM:   The prostate is without enlargement or nodularity. Both testes are in the scrotum and are unremarkable.

HEMOLYMPHATIC SYSTEM: The spleen weighs 90 grams. The capsule is intact. The parenchyma is dark-red. There is no increased follicular pattern. Lymph nodes throughout the body are small and inconspicuous. The bone density is unremarkable. The bone marrow of the rib is unremarkable.

ENDOCRINE SYSTEM:   The thyroid is unremarkable. The parathyroid glands are not identified. The adrenals are unremarkable.

11/8/2011  bl (10574)

Lawrence L. Nguyen, M.D., Forensic Pathologist

# ORANGE COUNTY SHERIFF-CORONER
## AUTOPSY REPORT

CEJA, Marcel Luis

11-04061-BA
Page 7

HEAD AND CENTRAL NERVOUS SYSTEM:   There is no subcutaneous or subgaleal hemorrhage in the scalp. The external periosteum and dura matter are stripped, showing no fractures of the calvarium or base of the skull. There are no tears of the dura matter. There is no epidural, subdural, or subarachnoid hemorrhage.

The brain weighs 1510 grams. The leptomeninges are thin and transparent. A normal convolutionary pattern is observed. Coronal sectioning demonstrates a uniformity of cortical gray thickness. The cerebral hemispheres are symmetrical. There is no softening, discoloration, or hemorrhage of the white matter. The basal ganglia are intact. Anatomic landmarks are preserved. Cerebral contusions are not present. The ventricular system is unremarkable, without dilation or distortion. The pons, medulla, and cerebellum are unremarkable. There is no evidence of uncal or cerebellar herniation. The vessels at the base of the brain have a normal pattern of distribution.   There are no aneurysms. The cerebral arteries are without arteriosclerosis.

Lawrence L. Nguyen, M.D., Forensic Pathologist

### ORANGE COUNTY SHERIFF-CORONER
### AUTOPSY REPORT

**CEJA, Marcel Luis**

11-04061-BA
Page 8

AUTOPSY FINDINGS

1.  Gunshot wound "A":
    a.  Entrance – right upper chest, no soot or stippling.
    b.  Exit – none.
    c.  Projectile – medium caliber, copper jacketed lead bullet.
    d.  Path – right upper chest, right middle and right lower lung lobes, terminating in right chest cavity.
2.  Gunshot wound "B":
    a.  Entrance – left upper abdomen, no soot or stippling.
    b.  Exit – right lower back.
    c.  Projectile – none recovered.
    d.  Path – left upper abdomen, stomach, pancreas, liver, inferior vena cava, exiting the right lower back.
3.  Gunshot wound "C":
    a.  Entrance – left posterior lateral wrist, no soot or stippling.
    b.  Exit – left base of thumb.
    c.  Projectile – fragments of copper jacket and lead recovered.
    d.  Path – soft tissues and bone of the left wrist and base of thumb.

11/8/2011 bt (10574)

Lawrence L. Nguyen, M.D., Forensic Pathologist

CEJA, Marcel Luis                                                               11-04061-BA

## AUTOPSY RECORD

11 - 04061 - BA

CEJA, MARCEL LUIS

GUNSHOT WOUNDS



wound A entrance
ovoid 3/4 x 5/8
RA 1/16
TO4 17
Rom 1
Ø S/S

wound B entrance
ovoid 1/2 x 3/8
LL 1/16
TO4 20 3/4
Lom 1
Ø S/S

wound C exit
irregular 7/8 x 1/2

wound C entrance
round 3/8 x 3/8

wound B exit
C-shaped 3/4 x 1/4
edges opposable
TO4 25
ROm 2 1/4
Ø S/S

1

CEJA, Marcel Luis                                                                11-04061-BA

**AUTOPSY RECORD**

11-04061-BA
CEJA, Marcel Luis
22 Years
Male

GENERAL

ET tube/EG tube
EKS pads

Black hair
mustache/Goatee
Brown eyes
not teeth
WD/WN

ovoid ring shaped abrasion (⅜ x ⅝")
with central sparing of
intact skin (¼ x ¼")

thoracotomy
incision
sutured

laparotomy
incision
sutured

ovoid scar
¾ x ½"

chest
tube

eccy

red
abrasion

catheter
marks

posterior
lividity

toe tag



_____ M.D.

1

## ORANGE COUNTY SHERIFF-CORONER
## HISTOLOGY REPORT

**CEJA, Marcel Luis**

**11-04061-BA**
**Page 1**

### MICROSCOPIC EXAMINATION

HEART:
- Sections of right ventricle, left ventricle, and interventricular septum are unremarkable.

LUNGS:
- Unremarkable.

KIDNEYS:
- Unremarkable.

LIVER:
- Unremarkable.

SPLEEN:
- Unremarkable.

BRAIN:
- Sections of cortex and cerebellum are unremarkable.

Lawrence L. Nguyen, M.D., Forensic Pathologist



**ORANGE COUNTY DISTRICT ATTORNEY'S OFFICE
BUREAU OF INVESTIGATION**

S.A. 11-022

**SUPPLEMENTAL REPORT**

CASE NAME:   CEJA, MARCEL LUIS

CLASSIFICATION:   OFFICER INVOLVED SHOOTING (FATAL)

TYPE:   AUTOPSY

AGENCY:   ANAHEIM POLICE DEPARTMENT

On November 7, 2011, at approximately 0900 hours, I attended the post mortem examination of MARCEL LUIS CEJA at the Orange County Sheriff-Coroner Forensic Science Center, 1071 Santa Ana Boulevard, Santa Ana.  Prior to the autopsy, I met with all involved personnel to discuss the circumstances surrounding CEJA's death.   The following personnel attended the meeting and autopsy:

- LAWRENCE NGUYEN          Forensic Pathologist
- RICHARD GUSTILO          Orange County Crime Lab Forensic Scientist
- JENNIFER JARRETT          Orange County Crime Lab Forensic Scientist
- RYAN MCNAMARA          Orange County Crime Lab Forensic Specialist
- JOHN SAVINO          Orange County Forensic Assistant
- JEFF MUNDY          Anaheim Police Department Detective
- TOM CONKLIN          Orange County District Attorney's Investigator

Following the meeting, the autopsy was conducted by Doctor LAWRENCE NGUYEN. Orange County Crime Lab Forensic Specialist RYAN MCNAMARA photographed the autopsy, while Orange County Crime Lab Forensic Scientist RICHARD GUSTILO collected physical evidence.

---

Investigator: ANDREW ROSS

Date of Report: 11/07/11

Approved By: *A. Samuel-189*

Date:  11/09/11

**EXHIBIT**

4

S.A. 11-022

At approximately 1920 hours, as the autopsy began, I observed a white body bag, which was sealed with a Coroner's body tag.  CEJA's body was removed from the bag.  Once the bag was removed, I observed the following items on the body:

- Endotrachial tube protruding from the mouth
- Eyes taped closed
- Blood pressure/temperature monitor pad on the left ear
- Two electrocardiogram pads on the right chest/shoulder area
- Intravenous (IV) site on the right chest
- Chest tube protruding from the right chest/side area
- Abrasion on the right shoulder
- Gunshot wound on the right chest
- Gunshot wound on the left upper abdomen
- Stitched surgical incision (Thoracotomy) running horizontally below the left side of the chest, beginning at the center of the chest and terminated on the left side, beneath the left arm.
- Stitched surgical incision (Thoracotomy) running vertically from the mid-chest, between the nipples, to the pubic line.
- Old scar on the left side of the stomach
- Intravenous (IV) sites (1 each) on the right and left upper thighs
- Catheter
- Hospital wristband on the right wrist
- Gauze pad and tape on the left wrist
- Gunshot wound on the left wrist
- Brown paper bags covering both hands
- Gunshot wound above the thumb of the left hand (visible once the bag was removed)
- Intravenous (IV) site on back of the left hand (visible once the bag was removed)
- Small laceration on the lower back, towards the right side
- Two identification tags on the big toe of the left foot

| | | |
|---|---|---|
| Investigator: ANDREW ROSS | *A.c. Ros* | Approved By: *A. Samuel-189* |
| Date of Report: 11/07/11 | | Date:  11/09/11 |

S.A. 11-022

- Tattoos on the top of head (unknown/obscured by hair), front of neck ("Dark Side"), right and left ears ( "O" and  "C" respectively), right chest ("DS"), above right and left knee ("O" and "C" respectively) and left wrist/hand ("Los Asesinos")

Orange County Forensic Specialist RICHARD GUSTILO collected the following evidence:

- Skin surrounding gunshot wounds on chest and wrist
- Fragment of bullet jacket from right chest
- Bullet from right chest cavity
- Fragment of bullet jacket from left wrist
- Fragment of bullet lead from left wrist
- Blood and tissue samples

Doctor NGUYEN conducted a thorough examination of CEJA's body and located five areas on the body, which were consistent with entry/exit gunshot wounds.

NGUYEN located a gunshot wound on CEJA's right chest, which NGUYEN believed was an entry wound.  NGUYEN believed the bullet entered through the chest, penetrated the right lung, deflected off the diaphragm membrane and came to rest within the chest cavity.  This bullet was recovered from the chest cavity during the autopsy.

NGUYEN located a gunshot wound on CEJA's left abdomen, which NGUYEN believed was an entry wound.  NGUYEN believed the bullet entered through the left abdomen in a downward left to right motion, striking the stomach, liver, pancreas and inferior vena cava (a major vein, which supplies de-oxygenated blood from the lower half of the body to the heart), before exiting CEJA's body through his right lower back area.  This bullet was not recovered during the autopsy.

NGUYEN located a gunshot wound on CEJA's left wrist, which NGUYEN believed was an entry wound.  NGUYEN believed the bullet entered through the left wrist and exited through the left hand, just above the thumb.   NGUYEN's assumption is that CEJA's hand may have been

| Investigator: ANDREW ROSS | | Approved By: *A. Samuel*-189 |
|---|---|---|
| Date of Report: 11/07/11 | | Date:  11/09/11 |

S.A. 11-022

positioned in front of his body during the shooting incident and was struck by one of the bullets that penetrated CEJA's chest/abdomen.    NGUYEN based this deduction on the fact that a fragment of bullet jacketing was located in the entry wound on the left wrist.    NGUYEN was unable to identify which bullet may have caused the injury to CEJA's wrist/hand.

Following the autopsy, NGUYEN concluded that the preliminary cause of death would be multiple gunshot wounds, pending further microscopic and toxicological examinations.

The autopsy concluded at 1108 hours.   The Orange County Coroner's case number regarding the autopsy was 11-4061BA.

| | | |
|---|---|---|
| Investigator: ANDREW ROSS | *[signature]* | Approved By: *[signature]* -189 |
| Date of Report: 11/07/11 | | Date:  11/09/11 |